## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CRAIG R. JALBERT, IN HIS CAPACITY AS TRUSTEE OF THE F2 LIQUIDATING TRUST, on behalf of himself and all others similarly situated,<br><br>          Plaintiff,<br><br>     v.<br><br>SECURITIES AND EXCHANGE COMMISSION,<br><br>          Defendant. | **CLASS ACTION COMPLAINT**<br><br>**Case No.:**<br><br>**JURY TRIAL DEMANDED ON ALL ISSUES SO TRIABLE** |

Plaintiff Craig R. Jalbert in his capacity as trustee of the F2 Liquidating Trust (the "Trust"), on behalf of himself and all other similarly situated parties, by and through undersigned counsel, files this class action complaint against the Securities and Exchange Commission (the "SEC") and alleges the following:

### PRELIMINARY STATEMENT

1.     This is an action to recover, on behalf of the plaintiff and all other similarly situated parties, money collected from them by the SEC as "disgorgement" without statutory authority or in excess of statutory authority. For decades, including the six-year limitations period applicable to this Complaint, the SEC has been obtaining from hundreds of individuals and entities billions of dollars, including approximately but not less than $14.9 billion over the last six years, in purported "disgorgement" and has been paying the vast majority of these purported "disgorgement" proceeds to the U.S. Treasury. Its theory for doing so was that "disgorgement" was not a penalty but served only a remedial purpose. Indeed, the SEC claimed that "disgorgement" was remedial and consistent with law, even though the SEC did not, and had

no intent to, return the purported "disgorgement" proceeds to the alleged victims. Moreover, the SEC obtained "disgorgement" payments in addition to, and often well in excess of, the monetary penalties the SEC obtained in the same actions under the explicit statutory fines provisions of the relevant federal securities laws, all of which have statutory monetary penalty maximums.

2.      The Supreme Court in *Kokesh v. SEC*, 137 S. Ct. 1635 (2017), recently analyzed the SEC's historical use of purported "disgorgement" and found that "disgorgement" in SEC actions operated as a penalty because the SEC sought and obtained "disgorgement" for punitive, law-enforcement reasons, and because, as the Supreme Court observed, in many SEC enforcement cases "disgorgement" was not compensatory but paid to the U.S. Treasury. Because SEC "disgorgement" is not remedial and constitutes a penalty, in each case in which the SEC obtained "disgorgement" and handed the proceeds over to the U.S. Treasury, it did so without proper statutory authority. Put differently, there is no statutory authority for the SEC to collect a penalty labeled as "disgorgement" separate from, and often in addition to, a civil penalty.

3.      F-Squared Investment Management, LLC (together with its subsidiaries, "F-Squared") is one of the entities that paid substantial sums (in F-Squared's case, $30 million) to the U.S. Treasury as purported "disgorgement," when in reality the payment was nothing more than an unauthorized fine in excess of properly-authorized, statutory fines and in violation of statutory and regulatory procedures governing true "disgorgement" orders.

4.      The Trust brings this action under the Administrative Procedure Act, on behalf of itself (as successor to the interests of the now-failed F-Squared for these purposes) and all other individuals and entities similarly situated, to undo the SEC's actions that contravene and exceed its statutory, regulatory, and constitutional authority, and to obtain equitable restitution of funds collected without authority.

5.     The Trust is representative of the putative class because F-Squared paid $30 million to the SEC as purported "disgorgement" in a cease-and-desist proceeding the SEC commenced against F-Squared in 2014.

6.     In particular, the Trust seeks a declaration that the SEC assessed an illegal penalty on each of the Proposed Class (as defined herein) members (including $30 million from F-Squared) as purported "disgorgement" and did not comply with the procedures required by the federal securities laws, as set forth in Section 8A(e) of the Securities Act of 1933 (codified at 15 U.S.C. § 77h-1(e)), Sections 21B(e) and 21C(e) of the Securities Exchange Act of 1934 (codified at 15 U.S.C. §§ 78u-2(e), 78u-3(e)), Sections 9(e) and 9(f)(5) of the Investment Company Act of 1940 (codified at 15 U.S.C. §§ 80a-9(e), 80a-9(f)(5)), and Sections 203(j) and 203(k)(5) of the Investment Advisers Act of 1940 (codified at 15 U.S.C. §§ 80b-3(j), 80b-3(k)(5)), in issuing or obtaining from federal district courts orders requiring "disgorgement" (including the Order (as defined below)).

7.     Because the SEC acted beyond its legal authority and capacity, the order directing F-Squared to pay $30 million in purported "disgorgement" is void, as are all orders issued by the SEC or in favor of the SEC in which a person or entity was ordered to pay as "disgorgement" sums that were without statutory authority or that exceeded statutory authority.

8.     The Trust has standing to sue under 5 U.S.C. §§ 702, 704, and 706 because it and its beneficiaries, as well as all others who are similarly situated, have been adversely affected by, and suffered legal wrong as a result of, final SEC actions. Further, this Complaint does not encroach upon sovereign immunity because the Trust seeks relief other than money damages. *See* 5 U.S.C. § 702.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 702.

10.     Venue is proper in this Court pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1391(e)(1).

## PARTIES

11.     The F2 Liquidating Trust is a liquidating trust established under the laws of Delaware, Internal Revenue Code Sections 671-677, and U.S. Treasury Regulations Section 301.7701-4(d), in connection with confirmation of the *Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors*, in chapter 11 proceedings referred to as *In re F-Squared Investment Management, LLC*, No. 15-11469 (LSS) (Bankr. D. Del. Dec. 7, 2015) [Docket No. 417] (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") [Docket No. 486]. The F2 Liquidating Trust is a Delaware entity. The beneficiaries of the F2 Liquidating Trust are the creditors of F-Squared determined by the Bankruptcy Court to have valid claims, and F2 Liquidating Trust is the successor-in-interest to F-Squared for purposes of effecting recoveries in its name. Craig R. Jalbert of Verdolino & Lowey, P.C., is the trustee of the F2 Liquidating Trust.  The Trust has a usual place of business in Foxboro, Massachusetts.

12.     The SEC is an agency of the United States government, headquartered in Washington, D.C.

## ALLEGATIONS

**I.     The SEC Improperly Obtains Disgorgement in Civil Actions in Federal Court and in Administrative Proceedings.**

13.     Since the 1970s, the SEC has sought and obtained "disgorgement" from defendants in both federal court actions and administrative proceedings in excess of its delegated statutory authority.

14.     The SEC has long claimed that disgorgement is an "equitable" remedy that is available to the SEC as a means of depriving a defendant of the fruits of his or her misconduct. With varying reasoning, the SEC has exceeded its statutory authority and sought and obtained monetary payments as purported "disgorgement" both in federal courts and in administrative proceedings.

### A.     Improper "Disgorgement" in Federal Court.

15.     In lower federal courts, since the 1970s, the SEC has sought and obtained monetary relief labeled as "restitution" or "disgorgement" outside of its statutory authority and the established meaning of those terms.

16.     After the 1929 stock market crash and the Great Depression, Congress enacted a series of laws to regulate the securities industry: the Securities Act of 1933 (codified at 15 U.S.C. § 77a *et seq.*), the Securities Exchange Act of 1934 (codified at 15 U.S.C. § 78a *et seq.*), the Investment Company Act of 1940 (codified at 15 U.S.C. § 80a-1 *et seq.*), and the Investment Advisers Act of 1940 (codified at 15 U.S.C. § 80b-1 *et seq.*). *See Kokesh*, 137 S. Ct. at 1639-40. The Securities Exchange Act created the SEC and enabled the SEC to conduct investigations and initiate actions in federal court to enforce the federal securities laws. *See id.* at 1640.

17.     "Initially, the only statutory remedy available to the SEC in an enforcement action was an injunction barring future violations of the securities laws. In the absence of statutory

authorization for monetary remedies, the Commission urged courts to order disgorgement as an exercise of their 'inherent equity power to grant relief ancillary to an injunction.'" *Id.* (citations omitted). At that time, lower courts accepted the SEC's arguments and reasoned that disgorgement was "a form of '[r]estitution measured by the defendant's wrongful gain'" which required a "defendant [to] give up 'those gains . . . properly attributable to the defendant's interference with the claimant's legally protected rights.'" *Id.* (citation omitted).

18.     Thus, beginning in the 1970s, lower courts ordered monetary payments to the SEC under the statutory authority for injunctive relief.

19.     Then, in 1990, Congress authorized the SEC to seek monetary civil penalties in federal court under the Securities Enforcement Remedies and Penny Stock Reform Act (the "Penny Stock Reform Act"). *See id*. The four major securities laws were amended to incorporate this authorization. *See* Securities Enforcement Remedies and Penny Stock Reform Act § 201 (codified at 15 U.S.C. § 77t(d) (Securities Act of 1933); 15 U.S.C. § 78u(d)(3) (Securities Exchange Act 1934); 15 U.S.C. § 78u-1(a) (Securities Exchange Act of 1934); 15 U.S.C. § 80a-41(e) (Investment Company Act of 1940); 15 U.S.C. § 80b-9(e) (Investment Advisers Act of 1940)). In 1984, Congress authorized the SEC to obtain monetary relief in the form of a "civil penalty" in federal court for *only* insider trading violations. *See* Insider Trading Sanctions Act of 1984 § 2 (current version at 15 U.S.C. § 78u-1).

20.     "The [Penny Stock Reform] Act left the Commission with a full panoply of enforcement tools: It may promulgate rules, investigate violations of those rules and the securities laws generally, and seek monetary penalties and injunctive relief for those violations. In the years since the [Penny Stock Reform] Act, however, the Commission has continued its practice of seeking disgorgement in enforcement proceedings." *Kokesh*, 137 S. Ct. at 1640.

21.     In other words, the SEC kept arguing for implied remedies, while also using its statutorily authorized enforcement tools. As a result, the SEC sought and obtained double recovery exceeding statutory limits and without statutory authority.

22.     In 2002, Congress also authorized the SEC to seek "equitable relief" for the "benefit of investors," removing any need, and supplanting its authority, to rely on the courts' inherent equitable powers to grant disgorgement. *See* Sarbanes-Oxley Act of 2002 § 305 (codified at 15 U.S.C. § 78u(d)(5) (Securities Exchange Act of 1934)).

23.     Under these statutory provisions, the SEC lacks any explicit authority to seek disgorgement in federal court. Its sole authority to obtain monetary remedies aside from statutory fines is cabined by a provision that authorizes only "equitable relief" and only for the benefit of victims. *See* 15 U.S.C. § 78u(d)(5) (Securities Exchange Act of 1934). In order to qualify as true equitable relief under long-standing Supreme Court precedent, *see Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002); *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), disgorgement must seek recovery of specifically traced funds of the victim and, under the securities laws, those funds must be returned to the victim. "Disgorgement" of other, non-traced funds owned by the wrongdoer is a legal, rather than an equitable, remedy.

24.     Because the SEC incorrectly classified "disgorgement" as a purported "equitable" remedy, the SEC considered it separate and distinct from a "penalty" and, therefore, obtained both "disgorgement" and civil penalties from defendants while subjecting only the civil penalties to separate, statutory limitations for determining their amounts and application. Thus, the SEC routinely double-dipped by obtaining "disgorgement" amounts in addition to any fines.

25.     In addition, as was the case with Mr. Kokesh, the SEC has obtained other

purported "disgorgement" payments that related to conduct that was more than five years old.  In fact, as some observers noted, the SEC was increasingly reliant on "disgorgement" following the Supreme Court's ruling in *Gabelli v. SEC*, 568 U.S. 442 (2013) that its statutory penalty actions were subject to a five-year statute of limitations.

### B.   Improper "Disgorgement" in Administrative Actions.

26.   In administrative actions, the SEC has also sought and obtained purported "disgorgement" by disregarding its own authorizing legislation. As a parallel to enforcement actions in federal court, for decades, the SEC has instituted and conducted in-house, administrative hearings before administrative law judges.

27.   In 1990, in the Penny Stock Reform Act, Congress also authorized the SEC to obtain in administrative proceedings the statutory remedy of an "accounting and disgorgement" pursuant to its adoption of "rules, regulations, and orders concerning *payments to investors*, rates of interest, periods of accrual, and such other matters as it deems appropriate to implement this subsection." Penny Stock Reform Act §§ 102, 202, 301, 401 (codified at 15 U.S.C. § 77h-1(e) (Securities Act of 1933); 15 U.S.C. § 78u-2(e) (Securities Exchange Act of 1934); 15 U.S.C. § 78u-3(e) (Securities Exchange Act of 1934); 15 U.S.C. § 80b-3(j) (Investment Adviser Act of 1940); 15 U.S.C. § 80b-3(k)(5) (Investment Company Act of 1940); 15 U.S.C. § 80a-9(f)(5) (Investment Company Act of 1940)) (emphasis added). At the same time, in the Penny Stock Reform Act, Congress first granted the SEC limited authority to levy civil penalties on registered individuals or persons associated with such registered entities in administrative proceedings. *See* 15 U.S.C. § 77h-1 (Securities Act of 1933), 15 U.S.C. § 78u-2(a) (Securities Exchange Act of 1934), 15 U.S.C. § 80a-9(d)(1) (Investment Company Act), 15 U.S.C. § 80b-3(i)(1) (Investment Advisers Act of 1940).

28.   After the financial crisis in 2008, admitting that its statutory authority only

permitted recovery of penalties in administrative proceedings in a limited category of cases, the SEC requested that Congress grant it expanded authority to obtain civil penalties against non-registered persons in those proceedings as well as in federal court. Congress granted this request by passing the Dodd-Frank Wall Street Reform and Consumer Protection Act in 2010, which, in part, extended the SEC's civil penalty authority to non-registered individuals and entities in administrative proceedings, and increased the amount of civil penalties available in administrative hearings. *See* Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 § 929P(a) (codified at 15 U.S.C. § 77h-1(g) (Securities Act of 1933); 15 U.S.C. § 78j-1(d) (Securities Exchange Act of 1934); 15 U.S.C. § 78u-2(a) (Securities Exchange Act of 1934); 15 U.S.C. § 80a-9(d) (Investment Company Act of 1940); 15 U.S.C. § 80b-3(i) (Investment Advisers Act of 1940)).

29.     Taking the provisions of the securities laws together, they thus mean that in administrative proceedings:

- An order of disgorgement requires an accounting;
- Disgorgement can be ordered only if paid to investors; and
- When not paid to investors, disgorgement is a monetary penalty that is subject to the limitations imposed by the penalty provisions, and, in any event, when not compensatory, disgorgement may not be ordered as an additional, non-statutory fine.

*             *             *

30.     In summary, based on statutes adopted by Congress from 1990 through the present, the SEC is statutorily authorized to obtain only the following types of monetary relief:

| Federal Court Actions | Administrative Proceedings |
|---|---|
| • Civil penalties subject to statutory maximums<br>• "Equitable relief that may be appropriate or necessary for the benefit of investors" | • Civil penalties subject to statutory maximums<br>• "Accounting and disgorgement" obtained pursuant to "rules, regulations, and orders concerning payments to investors" |

31.     Every time the SEC sought and obtained "disgorgement" in civil enforcement actions under the guise of equitable relief, without tracing assets or returning the funds to victims, it did so without a statutory basis, and in contravention of statutory limits on its powers. Likewise, every time the SEC has obtained purported "disgorgement" in administrative proceedings without conducting an accounting or returning funds to investor victims, it imposed an unauthorized monetary penalty. Where the disgorgement is in excess of, or not otherwise in correlation to, losses suffered by investors, disgorgement is improper. Finally, in each instance in which the SEC obtained a penalty and also "disgorgement" without returning the proceeds of the "disgorgement" to investor victims, it did so without statutory authority.

**II.     *Kokesh v. SEC*, 137 S. Ct. 1635 (2017).**

32.     According to longstanding Supreme Court precedent, *see Commissioner v. Acker*, 361 U.S. 87, 91 (1959), penalties cannot be assessed in the absence of explicit statutory authority.

33.     On June 5, 2017, in *Kokesh*, the Supreme Court unanimously held that disgorgement as used historically by the SEC was not remedial, but constituted a penalty because the SEC has obtained purported "disgorgement" for violations of public laws and, *inter alia*, for retribution and deterrence, *i.e.*, penal purposes. And, because "disgorgement in the securities-enforcement context is a 'penalty,'" it is "within the meaning of [28 U.S.C. § 2462], and so disgorgement actions must be commenced within five years of the date the claim accrues."

*Kokesh*, 137 S. Ct. at 1639 (citations omitted).

34.     The reason the statute of limitations was at issue in *Kokesh* was because the defendant there faced an enforcement action for conduct spanning a long period of time, and he argued that any disgorgement order could not reach back more than five years. As the Supreme Court described it:

> The [district] court ordered Kokesh to pay a civil penalty of $2,354,593, which represented "the amount of funds that [Kokesh] himself received during the limitations period." Regarding the Commission's request for a $34.9 million disgorgement judgment—$29.9 million of which resulted from violations outside the limitations period—the [district] court agreed with the Commission that because disgorgement is not a "penalty" within the meaning of § 2462, no limitations period applied.

*Id.* at 1641 (citation omitted).

35.     In reaching the decision that the SEC's disgorgement orders constituted penalties subject to the five-year statute of limitations, the Supreme Court identified two guiding principles that determine whether a pecuniary sanction is a "penalty": (i) "whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual"; and (ii) whether the pecuniary sanction "is sought 'for the purpose of punishment, and to deter others from offending in like manner'—as opposed to compensating a victim for his loss." *See id* at 1642.

36.     Applying these principles and relying on earlier precedent, the Supreme Court held that disgorgement—as used by the SEC in securities-enforcement actions—functions as a penalty for three reasons:

> a. *First*, "SEC disgorgement is imposed by the courts as a consequence for violating . . . public laws. The violation for which the remedy is sought is committed against the United States rather than an aggrieved individual— this is why, for example, a securities-enforcement action may proceed even if victims

do not support or are not parties to the prosecution." *Id.* at 1643.

b.   *Second*, "SEC disgorgement is imposed for punitive purposes." *Id.* The Supreme Court observed that since the early 1970s, the SEC has used disgorgement for the purpose of deterrence. "[I]t has become clear that deterrence is not simply an incidental effect of disgorgement. Rather, courts have consistently held that '[t]he primary purpose of disgorgement orders is to deter violations of the securities laws by depriving violators of their ill-gotten gains.'" *Id.* And, thus, "[s]anctions imposed for the purpose of deterring infractions of public laws are inherently punitive because 'deterrence [is] not [a] legitimate nonpunitive governmental objectiv[e].'" *Id.* (alternation in original).

c.   *Third*, "SEC disgorgement is not compensatory" because the disgorged profits are not paid directly and entirely to the victim investors. The Supreme Court noted that "disgorged profits are paid to the district court, and it is 'within the court's discretion to determine how and to whom the money will be distributed.' . . . Some disgorged funds are paid to victims; other funds are dispersed to the United States Treasury." *Id.* at 1644 (citation omitted). The Court stated that "[w]hen an individual is made to pay a noncompensatory sanction to the Government as a consequence of a legal violation, the payment operates as a penalty." *Id.*

37.   The Supreme Court also stressed that the SEC's use of disgorgement is not remedial for yet another reason: "it is not clear that disgorgement, as courts have applied it in the SEC enforcement context, simply returns the defendant to the place he would have occupied had he not broken the law" because disgorgement often exceeds the profits obtained by the defendant as a result of the alleged violation and is ordered without considering the amount of the

"defendant's expenses that reduced the amount of illegal profit." *Id.* at 1644. In other words, rather than restoring the *status quo ante*, as the SEC argued disgorgement does, the way that disgorgement has been used by the SEC often "leaves the defendant worse off." *Id.* at 1645.

38.     Additionally, the fact that the SEC's use of disgorgement sometimes compensates victim investors does not eliminate its punitive nature. "A civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Id.*

39.     Accordingly, the Supreme Court determined that the way that the SEC has used disgorgement in securities enforcement actions for nearly 50 years has been punitive, and thus a penalty. For Mr. Kokesh, this meant that the case was remanded to the lower courts to recalculate the monetary relief ordered against him to comply with the Supreme Court's holding, including by applying the five-year statute of limitations provided by 28 U.S.C. § 2462. *Id.* at 1639.

40.     For F-Squared and the members of the Proposed Class, this means that the SEC's collection of purported "disgorgement" from class members was without legal authority and must be undone. This conclusion follows inexorably from the established principles that penalties cannot be imposed without statutory authority or in excess of statutory limits, and can only be imposed according to legal procedures.

## ADMINISTRATIVE PROCEDURE ACT ALLEGATIONS

41.     Because the SEC's collection of "disgorgement" was without legal authority, exceeded legal limits, or did not comply with legal procedures, they are subject to challenge under the Administrative Procedure Act.

42.     Orders in administrative proceedings involving class members, and SEC orders

and actions seeking disgorgement in federal court actions involving class members, are final agency actions under the Administrative Procedure Act.  *See* 5 U.S.C. § 704.

43.     Each member of the Proposed Class (as defined below) was adversely affected by the SEC's actions. The Trust, on behalf of itself and all members of the Proposed Class, seeks the return of specific property collected without authorization or otherwise in contravention of legal limits and procedures, and therefore is not seeking money damages. Thus, this Court can order this relief, and find the relevant SEC orders and actions to be void, pursuant to the Administrative Procedure Act. *See* 5 U.S.C. §§ 702, 706(2).

## CLASS ALLEGATIONS

44.     The Trust brings this lawsuit on behalf of the Trust and the proposed Class members pursuant to Federal Rule of Civil Procedure 23.

45.     The proposed Class (the "Proposed Class") consists of: all persons or entities from whom the SEC has collected, during the period from October 26, 2011 to the present, purported "disgorgement," where the funds so collected:

    a)    exceed, either on their own or in combination with any penalties collected, the statutory maximum penalty amount,

    b)    are collected in addition to a civil penalty assessment,

    c)    were paid to the U.S. Treasury, rather than an identified victim or victims for identified victim losses,

    d)    were based on purported ill-gotten gains received by the defendant outside the statute of limitations provided by 28 U.S.C. § 2462,

    e)    in administrative proceedings, were imposed without any statutorily required accounting,

    f)    related to non-traced funds, such as funds not received by the defendant ordered to "disgorge" them, or funds owned by the defendant separate from any funds traced to wrongdoing, or

    g)    were collected without adequate proof that there were any victims or any losses caused by wrongdoing.

46.     The Trust reserves the right to amend the definition of the Proposed Class if

discovery or further investigation reveals that the Proposed Class should be expanded or otherwise modified.

47.     **Numerosity:** Members of the Proposed Class are so numerous that joinder of all members is impracticable. The Trust does not know the exact size of the Proposed Class, but believes that there are at least hundreds of putative members of the Proposed Class geographically dispersed throughout the United States and elsewhere.

48.     **Typicality:** The Trust's claims are typical of the claims of the members of the Proposed Class. The Trust and all members of the Proposed Class were damaged by the same improper conduct of the SEC. Specifically, the SEC collected penalties under the guise of purported "disgorgement" or otherwise from the members of the Proposed Class, without the authority to do so.

49.     **Adequacy of Representation:** The Trust will fairly and adequately protect and represent the interests of the Proposed Class. The interests of the Trust are coincident with, and not antagonistic to, those of the members of the Proposed Class. Accordingly, by proving its own claims, the Trust will prove other Proposed Class members' claims as well.

50.     **Adequacy of Legal Representation:** The Trust is represented by counsel that are experienced and competent in the prosecution of class action litigation and actions involving the SEC. The Trust and its counsel have the necessary financial resources to adequately and vigorously litigate this class action. The Trust can and will fairly and adequately represent the interests of the Proposed Class and have no interests that are adverse to, conflict with, or are antagonistic to the interests of the Proposed Class.

51.     **Commonality and Predominance:** Common questions of law and fact exist as to all members of the Proposed Class, including, but not limited, to the following:

a.  Whether the purported "disgorgement" in both federal court actions and administrative proceedings obtained by the SEC has operated as an unauthorized penalty;

b.  Whether penalty amounts collected exceed statutory limits;

c.  Whether the SEC's actions in obtaining "disgorgement" or exceeding penalty limits were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law";

d.  Whether the SEC's actions in obtaining "disgorgement" or exceeding penalty limits were "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right"; and

e.  Whether the SEC's actions in obtaining "disgorgement" or exceeding penalty limits were "without observance of procedure required by law."

52.     **Predominance:** Questions of law and fact common to the members of the Proposed Class predominate over questions that may affect only individual members of the Proposed Class because the SEC has acted on grounds generally applicable to the entire Proposed Class, thereby making a common methodology for determining class damages.

53.     **Superiority:** Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated, geographically dispersed persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through

the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action. The Proposed Class has a high degree of cohesion, and prosecution of the action through representation would be unobjectionable.

54.    **Ascertainability:** The members of the Proposed Class are ascertainable by applying objective criteria to public records and records maintained by the SEC and Proposed Class members.

55.    The Trust knows of no special difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

56.    Unless a class is certified, the SEC will improperly retain monies received as a result of its misreading of its authority and the statutory limits on penalties, including penalties imposed as purported "disgorgement," from the Trust and members of the Proposed Class.

## ALLEGATIONS SPECIFIC TO THE TRUST

57.    F-Squared was an investment management firm headquartered in Massachusetts serving clients in the advisor, institutional, retail, and retirement markets.

58.    On December 22, 2014, F-Squared agreed to resolve the SEC enforcement proceedings against it by means of a settled administrative cease-and-desist proceeding brought by the SEC pursuant to Sections 203(e) and 203(k) of the Investment Advisers Act and Sections 9(b) and 9(f) of the Investment Company Act. Under the terms of the order enacting this settlement (the "Order", attached hereto as **Exhibit A**), the SEC charged, and F-Squared agreed to admit, that F-Squared's performance track record for the period between April 2001 and September 2008 was materially inflated, hypothetical and back-tested. The Order required F-Squared to pay $30 million in purported "disgorgement" to the SEC (the "$30 million

payment"), as well as a $5 million fine (the "<u>Fine</u>").

59.　Pursuant to the Order, F-Squared transferred $35 million directly to the U.S. Treasury.  No part of this was paid to F-Squared's clients (collectively, "<u>Clients</u>").

60.　Less than eight months later, on July 8, 2015, F-Squared filed the Bankruptcy Case.

61.　The $30 million payment collected from F-Squared was a penalty not authorized by law, because it was not calculated based on funds traceable and causally connected to the alleged wrongdoing, and was not returned to the Clients.

62.　The SEC charged, and F-Squared admitted, that F-Squared misrepresented its performance track record for the period between April 2001 and September 2008 by claiming that it was based on live trading when, in fact, it was merely back-tested and hypothetical. However, even though F-Squared's early track record was alleged and admitted to be merely back-tested, when used for actual, live investing by F-Squared's Clients on the basis of trading signals issued by F-Squared, the back-tested model outperformed the market. Indeed, F-Squared's Clients continued to trade more and more of their own clients' securities on the basis of F-Squared's trading signals over time due to the actual returns generated by use of the F-Squared model.

63.　Reflecting that reality, the $30 million payment was not paid back to anyone purportedly harmed by F-Squared's wrongdoing or calculated in such a way as to reflect any purported harm to F-Squared's Clients.

64.　Accordingly, the $30 million payment was not representative of the purported harm to F-Squared's Clients and was not paid to F-Squared's Clients in violation of the statutory provisions.

65.     As stated herein, although the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, and the Investment Advisers Act of 1940 authorize the SEC to obtain accounting and disgorgement in administrative proceedings, any such disgorgement may not function as an additional fine that circumvents explicit statutory fines or exceeds the statutory maximums for such fines.

66.     With respect to F-Squared, the SEC determined that the appropriate statutory monetary penalty was $5 million. The SEC then extracted more money on top of that penalty by labelling the additional $30 million "disgorgement."  As a result, the total monetary penalty paid by F-Squared to the SEC exceeded what the SEC itself determined to be an appropriate monetary penalty here by at least $30 million. Upon information and belief, this has been the SEC's practice for decades and it has taken the same approach to obtaining "disgorgement" from other similarly situated members of the Proposed Class.

67.     In addition, the collection of the $30 million payment also violates Section 8A(e) of the Securities Act of 1933, Sections 21B(e) and 21C(e) of the Securities Exchange Act of 1934, Section 9(e) and 9(f)(5) of the Investment Company Act of 1940, and Sections 203(j) and 203(k)(5) of the Investment Advisers Act of 1940, which grant the SEC the power to order disgorgement but only for the benefit of investors who suffered losses as a result of violative conduct. Upon information and belief, in addition to the $30 million payment from F-Squared, the SEC has been obtaining purported "disgorgement" for decades, the amount of which is not correlated to the losses suffered by investors. As a result, the SEC did not have the power to order the $30 million payment, or "disgorgement" from similarly situated parties, and such orders of "disgorgement" is void.

68.     The Order became "final" when issued on December 22, 2014 in accordance with SEC Rule of Practice 249(c)(7).

69.     As F-Squared's successor-in-interest for these purposes, the Trust was injured in fact in the amount of at least $30 million.

70.     Absent the unlawful Order, F-Squared would not have paid the $30 million payment that the SEC had no authority to obtain.

71.     The Trust seeks a declaratory judgment invalidating the relevant portion of the SEC's Order, and restitution and recovery of the $30 million in unlawful "disgorgement" transferred to the U.S. Treasury.

72.     The issuance of the Order was a final agency action under the Administrative Procedure Act. *See* 5 U.S.C. § 704. Because it was in violation of the Investment Company Act of 1940 and the Investment Advisers Act of 1940 and because it was not authorized by law, the SEC's actions were unlawful and subject to challenge under the Administrative Procedure Act.

73.     F-Squared was adversely affected by the SEC's action. As described below, the Trust is seeking a determination that the Order is void in relevant part and seeks the return of the $30 million "disgorgement" paid to the SEC pursuant to the Order, and is not seeking money damages. Thus, this Court can hold the Order to be unlawful in relevant part and set aside its relevant portion, and the Trust has the standing to ask it to do so. *See* 5 U.S.C. §§ 702, 706(2).

## COUNT I

### Administrative Procedure Act (5 U.S.C. § 702, 5 U.S.C. § 706)
### On Behalf of the Trust Individually and the Proposed Class

74.     The Trust incorporates paragraphs 1 through 73 as if fully re-alleged herein.

75.     The SEC exceeded its statutory authority by seeking and obtaining disgorgement from F-Squared and the similarly situated members of the Proposed Class as a separate monetary

penalty or otherwise beyond statutory authorization.

76.     Under 5 U.S.C. § 706(2)(A), a reviewing court shall hold unlawful and set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

77.     Under 5 U.S.C. § 706(2)(C), a reviewing court shall hold unlawful and set aside agency action found to be "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

78.     Pursuant to securities laws, including the Securities Act of 1933, Securities Exchange Act of 1934, Investment Company Act of 1940, and Investment Advisers Act of 1940, in administrative proceedings, the SEC is authorized to obtain "civil penalties" and "an accounting and disgorgement" if it serves the remedial function of making victims whole.

79.     Similarly, pursuant to the securities laws, in federal court actions, the SEC is authorized to obtain "civil penalties" subject to statutory limits and "equitable relief" only if such "equitable relief" has the true character of equitable relief, and only if it is collected for the benefit of investors.

80.     For decades, the SEC has been obtaining purported "disgorgement" for purposes other than making victims whole, and has required or caused such "disgorgement" to be paid to the U.S. Treasury, not the purported victims.

81.     In *Kokesh*, the Supreme Court determined that this historical use of "disgorgement" by the SEC is, in reality, the imposition of a penalty.

82.     As a result, the SEC has been improperly obtaining duplicate collections, in violation of its statutory authority of (i) "fines" which are permitted "civil penalties" and (ii) "disgorgement" orders, which the Supreme Court has now determined operate as penalties.

83.     Thus, in both administrative proceedings and federal court actions, the SEC exceeded its statutory authority by obtaining "disgorgement" from F-Squared and the similarly situated members of the Proposed Class.

84.     Accordingly, all SEC orders of disgorgement and all other SEC orders and actions seeking or collecting disgorgement within the six-year statute of limitations applicable to Administrative Procedure Act cases must be held to be unlawful and set aside pursuant to 5 U.S.C. §§ 706(2)(A) and (C) as actions in excess of the SEC's statutory authority, and the relief set forth below in the Prayer for Relief should be granted.

## COUNT II

**Administrative Procedure Act (5 U.S.C. § 702, 5 U.S.C. § 706)**
**On Behalf of the Trust Individually and the Proposed Class**

85.     The Trust incorporates paragraphs 1 through 84 as if fully re-alleged herein.

86.     Under 5 U.S.C. § 706(2)(D), a reviewing court shall hold unlawful and set aside agency action found to be "without observance of procedure required by law."

87.     The SEC failed to observe the procedural requirements of the securities laws, including the Securities Act of 1933, Securities Exchange Act of 1934, Investment Company Act of 1940, and Investment Advisers Act of 1940, by requiring "disgorgement" from F-Squared and similarly situated Proposed Class members without obtaining an accounting of the profits that F-Squared or the Proposed Class members allegedly acquired as a result of wrongdoing or tracing the purported investor losses to the profits acquired as a result of the wrongdoing, and then tailoring the order of "disgorgement" accordingly. *See* Section 8A(e) of the Securities Act of 1933 (codified at 15 U.S.C. § 77h-1(e)), Sections 21B(e) and 21C(e) of the Securities Exchange Act of 1934 (codified at 15 U.S.C. §§ 78u-2(e), 78u-3(e)), Sections 9(e) and 9(f)(5) of the Investment Company Act of 1940 (codified at 15 U.S.C. §§ 80a-9(e), 80a-9(f)(5)), and Sections

203(j) and 203(k)(5) of the Investment Advisers Act of 1940 (codified at 15 U.S.C. §§ 80b-3(j), 80b-3(k)(5)).

88.     Accordingly, the SEC orders of disgorgement against F-Squared and the members of the Proposed Class within the six-year statute of limitations applicable to Administrative Procedure Act cases must be held unlawful and set aside as an agency action that fails to observe procedural requirements, and the relief set forth below in the Prayer for Relief should be granted. 5 U.S.C. § 706(2)(D).

## PRAYER FOR RELIEF

WHEREFORE, the Trust, on behalf of itself and members of the Proposed Class, prays for relief as follows:

Certification of the Proposed Class under Federal Rule of Civil Procedure 23 and appointment of the Trust as the representative of the Proposed Class and its counsel as Class counsel.

On Count I, entry of a judgment against the SEC by this Court, (a) declaring that the SEC's collection of purported "disgorgement," pursuant to the Order, and from the members of the Proposed Class is unlawful pursuant to 5 U.S.C. §§ 706(2)(A) and (C); (b) setting aside the purported "disgorgement" from members of the Proposed Class, including the $30 million purported "disgorgement" paid to the U.S. Treasury by F-Squared under the Order; (c) ordering the refund to the members of the Proposed Class of the purported "disgorgement" paid to the U.S. Treasury, including the $30 million purported "disgorgement" paid to the U.S. Treasury by F-Squared under the Order; and (d) providing such other relief as the Court deems just and proper.

On Count II, entry of a judgment against the SEC by this Court, (a) declaring that the collection of purported "disgorgement" by the SEC is unlawful pursuant to 5 U.S.C.

§ 706(2)(D); (b) setting aside the orders of purported "disgorgement," including the Order; (c) ordering the refund to the members of the Proposed Class of the purported "disgorgement" paid to the U.S. Treasury, including the $30 million purported "disgorgement" paid to the U.S. Treasury by F-Squared under the Order; and (d) providing such other relief as the Court deems just and proper.

[*Remainder of page intentionally left blank.*]

Dated: October 26, 2017
Boston, Massachusetts

**BROWN RUDNICK LLP**

*/s/ William R. Baldiga*
William R. Baldiga, Esq. (BBO# 542125)
Sunni P. Beville, Esq. (BBO# 652369)
Wayne F. Dennison, Esq. (BBO# 558879)
Sharon I. Dwoskin, Esq. (BBO# 691579)
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
Fax: (617) 856-8201
wbaldiga@brownrudnick.com
sbeville@brownrudnick.com
wdennison@brownrudnick.com
sdwoskin@brownrudnick.com

-and-

Alex Lipman, Esq. (*pro hac vice* application to be filed)
Justin S. Weddle, Esq. (*pro hac vice* application to be filed)
Ashley L. Baynham, Esq. (*pro hac vice* application to be filed)
Chelsea Mullarney, Esq. (*pro hac vice* application to be filed)
Selbie L. Jason, Esq. (*pro hac vice* application to be filed)
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Fax: (212) 209-4801
alipman@brownrudnick.com
jweddle@brownrudnick.com
abaynham@brownrudnick.com
cmullarney@brownrudnick.com
sjason@brownrudnick.com

-and-

Stephen A. Best, Esq. (*pro hac vice* application to be filed)
601 Thirteenth Street NW
Washington, D.C. 20005
Telephone: (202) 536-1700
Fax: (202) 536-1701
sbest@brownrudnick.com

*Counsel for the Trust*