# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CRAIG R. JALBERT, IN HIS CAPACITY AS
TRUSTEE OF THE F2 LIQUIDATING TRUST,
on behalf of himself and all others similarly
situated,

        Plaintiff,

    v.

SECURITIES AND EXCHANGE COMMISSION,

        Defendant.

**Civil Action No.: 17-cv-12103-FDS**

**Leave to file excess pages granted on June 5, 2018**

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT SECURITIES AND EXCHANGE COMMISSION'S <u>MOTION TO DISMISS THE COMPLAINT</u>

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

BACKGROUND .................................................................................................................................. 2

     I.     *Kokesh* Clarified that the SEC and Lower Courts Made a Mistake of Law. .......... 2

     II.    Plaintiff- and Class-Specific Allegations in the Complaint. ................................... 5

          A.     Trust-Specific Allegations. ................................................................... 5

          B.     Class-Specific Allegations. ................................................................... 5

          C.     Remedies Sought in the Action. ........................................................... 6

ARGUMENT ........................................................................................................................................ 6

     I.     This Case Is Properly Asserted Under the APA. .................................................. 7

     II.    The SEC's Arguments Do Not Defeat this Case. ............................................... 11

          A.     This Case Alleges Claims that Cannot Be Waived Under Principles of Separation of Powers. .......................................................... 12

          B.     The Portion of the SEC's Settlement with F-Squared and the Portion of the Settled Order Providing for Disgorgement Are Void Because the SEC Acted Outside of Its Statutory Authority. .................................. 15

          C.     The Settled Order Is Predicated on a Mutual Mistake and Does Not Waive the Claims at Issue Here. ........................................................... 17

          D.     The Relevant Statutory-Review Schemes of the Federal Securities Laws Do Not Bar These APA Claims. .................................................. 18

               i.     The Supreme Court's *Free Enterprise* decision demonstrates jurisdiction here and dooms the SEC's Motion. .......................... 18

               ii.     *Res Judicata* does not apply. ........................................................ 23

               iii.    Judicial-review provisions are irrelevant where, as here, there was no adequate remedy at the time of the enforcement action. .. 24

CONCLUSION ................................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Trunzo,*
129 F.3d 1174 (11th Cir. 1997) ...............................................................................16

*Am. Coal Co. v. Mine Safety & Health Admin.,*
No. 08-CV-0814-MJR, 2010 WL 653113 (S.D. Ill. Feb. 19, 2010).......................22

*Anderson v. Holder,*
673 F.3d 1089 (9th Cir. 2012) .................................................................................16

*Arrieta-Gimenez v. Arrieta-Negron,*
859 F.2d 1033 (1st Cir. 1988) .................................................................................23

*Ball, Ball & Brosamer, Inc. v. Reich,*
24 F.3d 1447 (D.C. Cir. 1994) .................................................................12, 14, 15

*Bandimere v. SEC,*
844 F.3d 1168 (10th Cir. 2016) ..............................................................................14

*Bangura v. Hansen,*
434 F.3d 487 (6th Cir. 2006) ..................................................................................24

*Bebo v. SEC,*
799 F.3d 765 (7th Cir. 2015), *cert. denied,* 136 S. Ct. 1500 (2016)......................20

*Bennett v. Spear,*
520 U.S. 154 (1997)...................................................................................................9

*Bowen v. Massachusetts,*
487 U.S. 879 (1988)...............................................................................................8, 24

*Califano v. Sanders,*
430 U.S. 99 (1977).....................................................................................................7

*Chau v. SEC,*
665 F. App'x 67 (2d Cir. 2016) ..............................................................................20

*Cloister Printing Corp. v. United States,*
100 F.2d 355 (2d Cir. 1938)....................................................................................18

*Conservation Law Found., Inc. v. Busey,*
79 F.3d 1250 (1st Cir. 1996)................................................................................7, 19

*Donald F. Duncan, Inc. v. Royal Tops Mfg. Co.*,
　343 F.2d 655 (7th Cir. 1965) ..................................................................23

*El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health &
　Human Servs.*,
　396 F.3d 1265 (D.C. Cir. 2005) ...............................................................25

*Federated Dep't Stores v. Moitie*,
　452 U.S. 394 (1981).................................................................................24

*Free Enterprise Fund v. Public Company Accounting Oversight Board*,
　561 U.S. 477 (2010)...................................................................19, 20, 21

*Freytag v. Comm'r*,
　501 U.S. 868 (1991).........................................................................13, 14

*Frillz, Inc. v. Lader*,
　925 F. Supp. 83 (D. Mass. 1996), *aff'd*, 104 F.3d 515 (1st Cir. 1997) ...................16

*Gen. Elec. Co. v. Jackson*,
　610 F.3d 110 (D.C. Cir. 2010)...........................................................21, 22

*Haines v. Fed. Motor Carrier Safety Admin.*,
　814 F.3d 417 (6th Cir. 2016) ..................................................................25

*Hawaii v. Trump*,
　878 F.3d 662 (9th Cir. 2017), *cert. granted*, 138 S. Ct. 923 (2018) ......................23

*Hawknet, Ltd. v. Overseas Shipping Agencies*,
　590 F.3d 87 (2d Cir. 2009).....................................................................23

*Hill v. SEC*,
　825 F.3d 1236 (11th Cir. 2016) .............................................................20

*Huntington v. Attrill*,
　146 U.S. 657 (1892)..................................................................................3

*Jarkesy v. SEC*,
　803 F.3d 9 (D.C. Cir. 2015)....................................................................20

*Kokesh v. SEC*,
　137 S. Ct. 1635 (2017) ..................................................................... *passim*

*Levy v. SEC*,
　462 F. Supp. 2d 64 (D.D.C. 2006) ........................................................22

*Ljutica v. Holder*,
　588 F.3d 119 (2d Cir. 2009)...................................................................23

*In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*,
   501 F. Supp. 2d 34 (D.D.C. 2007) ......................................................................21

*McNary v. Haitian Refugee Ctr., Inc.*,
   498 U.S. 479 (1991)...............................................................................15, 21, 22, 23

*Mexichem Fluor, Inc. v. EPA*,
   866 F.3d 451 (D.C. Cir. 2017) ...........................................................................12

*Minard Run Oil Co. v. U.S. Forest Serv.*,
   C.A. No. 09-125, 2009 WL 4937785 (W.D. Pa. Dec. 15, 2009) ............................9

*Mitchell v. United States*,
   930 F.2d 893 (Fed. Cir. 1991)..............................................................................25

*In re Montreal, Maine & Atlantic Ry., Ltd.*,
   888 F.3d 1 (1st Cir. 2018) ......................................................................................6

*N.H. Hosp. Assoc. v. Burwell*,
   No. 15-cv-460, 2017 WL 822094 (D.N.H. Mar. 2, 2017) .....................................11

*Nat'l Juvenile Law Ctr. v. Regnery*,
   738 F.2d 455 (D.C. Cir. 1984) .............................................................................15

*National Revenue Corp. v. Violet*,
   807 F.2d 285 (1st Cir. 1986) ................................................................................16

*New York Republican State Committee v. SEC*,
   799 F.3d 1126 (D.C. Cir. 2015) ...........................................................................21

*NLRB v. New Vista Nursing & Rehab.*,
   719 F. 3d 203 (3d Cir. 2013)................................................................................12

*Owens v. Hills*,
   450 F. Supp. 218 (N.D. Ill. 1978) ........................................................................15

*Patchak v. Zinke*,
   138 S. Ct. 897 (2018)............................................................................................12

*Pregis Corp. v. Kappos*,
   700 F.3d 1348 (Fed. Cir. 2012)............................................................................25

*Rashid v. United States*,
   170 F. Supp. 2d 642 (S.D. W. Va. 2001), *aff'd*, 48 F. App'x 892 (4th Cir.
   2002) .................................................................................................................10, 11

*Sable Commc'ns of Cal. Inc. v. FCC*,
   827 F.2d 640 (9th Cir. 1987) ...............................................................................25

*SEC v. Binette*,
  679 F. Supp. 2d 153 (D. Mass. 2010) ...................................................................7

*SEC v. Quan*,
  817 F.3d 583 (8th Cir. 2016) ...........................................................................10

*Sierra Club v. Morton*,
  405 U.S. 727 (1972) ..........................................................................................8

*Succar v. Ashcroft*,
  394 F.3d 8 (1st Cir. 2005) ..................................................................................7

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994) ....................................................................................20, 22

*Tilton v. SEC*,
  824 F.3d 276 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2187 (2017) .....................20

*Town of Sanford v. United States*,
  140 F.3d 20 (1st Cir. 1998) ..............................................................................25

*TransAmerica Mortg. Advisors, Inc. v. Lewis*,
  444 U.S. 11 (1979) ...........................................................................................17

*Union Pac. R.R. Co. v. Surface Transp. Bd.*,
  863 F.3d 816 (8th Cir. 2017) ............................................................................12

*United States v. Giordano*,
  469 F.2d 522 (4th Cir. 1972), *aff'd*, 416 U.S. 505 (1974) .................................13

*United States v. Martinez*,
  122 F.3d 421 (7th Cir. 1997) ............................................................................14

*United States v. Underwood*,
  597 F.3d 661 (5th Cir. 2010) ............................................................................14

*United States v. Wyle (In re Pacific Far East Lines, Inc.)*,
  889 F.2d 242 (9th Cir. 1989) ............................................................................18

*Util. Regulatory Grp. v. EPA*,
  134 S. Ct. 2427 (2014) .....................................................................................13

**Statutes**

5 U.S.C. § 551(13) ..................................................................................................8

5 U.S.C. § 702 ....................................................................................................7, 8

5 U.S.C. § 706(2)(A), (C), (D) ...............................................................................7

5 U.S.C. § 706(2)(C) ................................................................................................................9

15 U.S.C. § 78y .................................................................................................................19, 22

15 U.S.C. §§ 80a-42(a), 80b-13(a) ..................................................................................19, 22

28 U.S.C. § 1331 ...................................................................................................................7

30 U.S.C. § 816(a) ................................................................................................................22

Administrative Procedure Act, 5 U.S.C. §§ 701-706 ........................................................1

Investment Advisers Act, 15 U.S.C. § 80b-13(a) .............................................................18

**Other Authorities**

17 C.F.R. § 201.240(c)(4)(v) ........................................................................................14, 17

Plaintiff Craig R. Jalbert, in his capacity as Trustee of the F2 Liquidating Trust, for himself and on behalf of all others similarly situated (the "Trust" or "Plaintiff"), respectfully submits this Memorandum of Law in Opposition to the Motion to Dismiss the Complaint (the "Motion to Dismiss") filed by the Securities and Exchange Commission (SEC), for a purported lack of subject matter jurisdiction and failure to state a claim. For the reasons set forth below, the SEC's motion should be denied.

## PRELIMINARY STATEMENT

For some 50 years, the SEC has been imposing penalties on respondents and defendants well in excess of its statutory limits. These penalties were dressed up as "disgorgement" and ordered routinely, including in cases in which "disgorgement" was ordered on top of statutory fines. As a result, the SEC illegally obtained billions of dollars in unauthorized fines from hundreds of individuals and entities. Worse, this happened because the SEC was dissatisfied with the limits on its authority imposed by Congress; it arrogated to itself new powers, elevating its own law-enforcement policy preferences over those clearly delineated in the relevant federal securities laws. Worse still, the SEC managed to persuade all lower federal courts to go along with its unlawful power grab. The Complaint in this case challenges this unlawful conduct and seeks redress under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706. The SEC's response to this challenge is essentially that, despite 50 years of uninterrupted, seemingly well-settled error, Plaintiff and the Class members should have caught the SEC's misconduct earlier and are now out of luck because they did not. It also suggests that since most of the Class members have been found by the SEC to have violated the federal securities laws, they got what they deserved.[1]

---

[1] The suggestion that the SEC's unlawful actions in excess of its statutory authority have no undeserved consequences, *see* MTD Br. at 2-5, is disturbing and also untrue. For example, analysis of publicly-available

The SEC may not impose unlawful penalties even on people found to have committed securities-laws violations. The SEC is an agency of the federal government in our constitutional republic. The limits on its powers reflect congressional policy choices—meaning the choices of the people as expressed by their duly-elected representatives—and the SEC must live within its statutory limits. The APA is the tool prescribed by Congress to rein in agencies that fail to heed congressional limits on their power. Nothing in the federal securities laws—or anywhere else— prevents this Court from exercising its jurisdiction. And, because the claims at issue go to the core of the separation of powers, they cannot be waived or bargained away.

## BACKGROUND

Plaintiff, on behalf of a class of similarly-situated persons, commenced this action to recover billions of dollars of penalties unlawfully collected by the SEC as purported "disgorgement" without the statutory authority to do so. *See* Compl. ¶¶ 13-43, 59-73. Accepting all facts in the Complaint as true and drawing all reasonable inferences therefrom in favor of the Trust, the Complaint demonstrates that the SEC has acted well outside its statutory authority to impose monetary penalties and proper disgorgement. *See id.* ¶¶ 13-43, 64-88.

## I.   *Kokesh* Clarified that the SEC and Lower Courts Made a Mistake of Law.

The Complaint is the logical outcome of the Supreme Court's opinion in *Kokesh v. SEC*, 137 S. Ct. 1635 (2017). In *Kokesh*, the Supreme Court found that "disgorgement" in SEC actions operated as a penalty because the SEC sought and obtained "disgorgement" for punitive, law enforcement reasons, and because, as the Supreme Court observed, in many SEC enforcement cases, "disgorgement" was not compensatory. *See* Compl. ¶¶ 2, 32, 40. In other words, *Kokesh* declared that the SEC and lower courts had made a mistake of law in granting relief labeled as

---

information on the SEC's website indicates that at least $3.8 billion in illegal penalties was ordered from public entities or subsidiaries of public entities and, thus, in many cases from the pockets of innocent shareholders.

"disgorgement" in a manner that operated as a penalty. *See Kokesh*, 137 S. Ct. at 1643-45.

Specifically, the Supreme Court described two guiding principles to determine whether disgorgement was remedial *or* penal: (1) "whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual"; and (2) whether the pecuniary sanction "is sought 'for the purpose of punishment, and to deter others from offending in a like manner'—as opposed to compensating a victim for his loss." *Id.* at 1642 (quoting *Huntington v. Attrill*, 146 U.S. 657, 667-68 (1892)). Applying these principles, the Supreme Court rejected the SEC's historically-held position that disgorgement in the securities-enforcement context was remedial, and found it to be a penalty subject to the five-year statute of limitations for penalties, fines, and forfeiture. *See id.* at 1643-44.

In its Motion, the SEC attempts to sidestep *Kokesh* by claiming that (1) *Kokesh* did not address disgorgement in administrative proceedings, and (2) left for another day the question of the power to order disgorgement. *See* MTD Br. at 5. This response ignores the Court's analysis: because the relevant characteristics of SEC "disgorgement" are common to SEC enforcement proceedings in federal court and administrative actions, the Court's reasoning applies with equal force to federal court actions and administrative proceedings. In other words, in each case (regardless of venue) in which the SEC obtained "disgorgement" in addition to statutory penalties and handed "disgorgement" proceeds over to the U.S. Treasury, it did so without proper statutory authority. *See* Compl. ¶ 2.

As for the question of whether there is a legal source for the SEC's claimed power to seek and obtain disgorgement, the SEC is correct that the question was reserved by the Court. Indeed, the question was not presented by the parties in *Kokesh*, but *amici curiae* raised it directly. *See, e.g.*, Brief for Mark Cuban as *Amicus Curiae* in Support of Petitioner, *Kokesh*, 137

S. Ct. 1635 (Mar. 3, 2017). And the issue was an important part of the oral argument. *See* Tr. of

Oral Argument at 7:20-8:2, 9:5-20, 13:10-22, 17:21-18:12, 31:16-23, 52:14-21, *Kokesh*, 137 S.

Ct. 1635 (Apr. 18, 2017). For example, in the following exchange, the paucity of either Supreme

Court or statutory authority was highlighted:

> Justice Gorsuch: "Well, here, we don't know [where the money collected in disgorgement goes], because there's no statute governing it. We're just making it up."
>
> Ms. Elaine J. Goldenberg (Assistant to the Solicitor General, Department of Justice, on behalf of the SEC): "Well, I wouldn't say that, Your Honor. There are almost 50 years of precedents on how this should work, and I think the way it worked is—"
>
> Justice Gorsuch: "Not in this Court."
>
> Ms. Goldenberg: "—is clear. It's true that this Court doesn't have precedent about disgorgement in the SEC context . . . ."

*Id.* at 52:14-21.

In its opinion, the Court recounted the history of the SEC's use of disgorgement which

explains the origin of the SEC's breach of the limits of its authority. The Court first observed that

disgorgement began as the sole, judge-made means of punishing wrongdoers in SEC actions,

because, at the start, the federal securities laws did not contain any monetary penalty provisions.

*See Kokesh*, 137 S. Ct. at 1639-40. The Court then expressed surprise that when Congress gave

the SEC explicit statutory authority to obtain penalties as part of "a full panoply of enforcement

tools," the SEC continued to seek and obtain disgorgement as if Congress had not acted. *See id.*

at 1640.[2]

Against this background, the Court's footnote 3—which the SEC relies upon to dismiss

*Kokesh*—is simply an acknowledgement by the Court, interested in hearing more about the

---

[2] "The [Securities Enforcement Remedies and Penny Stock Reform Act of 1990] left the Commission with a full panoply of enforcement tools: It may promulgate rules, investigate violations of those rules and the securities laws generally, and seek monetary penalties and injunctive relief for those violations. In the years since the Act, however, the Commission has continued its practice of seeking disgorgement in enforcement proceedings." *Id.*

matter, that that question was reserved for another day because it was not fully briefed and presented by *Kokesh*. *See id.* at 1642 n.3.

## II.   Plaintiff- and Class-Specific Allegations in the Complaint.

### A.   Trust-Specific Allegations.

By order dated December 22, 2014, the SEC initiated and settled an SEC enforcement proceeding against F-Squared Investments, Inc. ("F-Squared") for violations of Sections 203(e) and 203(k) of the Investment Advisers Act and Sections 9(b) and 9(f) of the Investment Company Act (the "Settled Order"). Compl. ¶ 58. As part of this settlement, the SEC determined that a $5 million civil statutory penalty was appropriate and imposed it. *Id.* F-Squared paid that penalty amount in full. *Id.* ¶ 59. The SEC extracted an additional $30 million payment as purported "disgorgement." *Id.* ¶ 58. This "disgorgement" amount bore no relationship to any investor losses—because there were none—and it was not returned to any purported investor victims. *Id.* ¶ 61. Instead, the SEC required F-Squared to wire the $30 million payment to the U.S. Treasury. *Id.* ¶ 63. The only victims of F-Squared's conduct, therefore, were its creditors, whose bills went unpaid when F-Squared was forced to file for bankruptcy less than eight months after making the $30 million unlawful "disgorgement" payment. *Id.* ¶ 60. The Trust represents these victims.

### B.   Class-Specific Allegations.

The Class members are similarly situated to the Trust because they were all forced to make payments labeled as "disgorgement" that in fact were penalties. *See* Compl. ¶¶ 44-73. As a result, there was no statutory authority for the SEC's actions, whether in court proceedings, administrative proceedings, or settlements; all of these penalties exceeded statutory authorization, and; certain of these penalties were outside the statute of limitations for penalties. *See id.* ¶¶ 45, 51, 75-88.

## C.      Remedies Sought in the Action.

The Motion to Dismiss mischaracterizes this action as one seeking to "invalidate" the Settled Order. MTD Br. at 2. This is not an action by one party seeking to invalidate a single order entered against that party. Rather, this is a class action challenging the SEC's policy and practice (both historical and current) of obtaining unlawful penalties under the guise of "disgorgement"and without observing procedures required by law. *See* Compl. ¶¶ 13-40. Rather than seeking to invalidate the Settled Order, the Trust alleges that as part of the overall relief, for itself, it seeks "a declaratory judgment invalidating *the relevant portion of the SEC's Order* [as to disgorgement only], and restitution and recovery of the $30 million in unlawful 'disgorgement' transferred to the U.S. Treasury." *Id.* ¶ 71 (emphasis added). The Trust is not seeking to invalidate any of the predicate findings that underpin any statutory penalties imposed on any member of the Class or any of the statutory penalty amounts, including the propriety of the $5 million fine paid by F-Squared. *See id.* Trust-specific relief is covered by the Complaint's charging language on behalf of the Class, which seeks declaratory and other relief, as well as the return of unlawfully obtained "disgorgement." *See id.* ¶¶ 75-88, Prayer for Relief at 23-24.

## ARGUMENT[3]

On motions to dismiss for lack of subject matter jurisdiction or failure to state a claim the Court must construe the complaint liberally, treating all "well-pleaded facts as true and 'draw[ing] all reasonable inferences therefrom in the pleader's favor.'" *In re Montreal, Maine &*

---

[3] Apparently in an attempt to recast this action as one to overturn the Settled Order, the SEC confines its Motion to Dismiss to just the allegations specific to Plaintiff, not the putative Class. *See* MTD. Br. at 6-7. In doing this, the SEC is once again arrogating to itself powers beyond the applicable rules. The rules of civil procedure and applicable law have requirements regarding the arguments that must be made in a motion to dismiss, and the consequences of failing to make those arguments. The same rules apply to the SEC. In responding to the arguments made in the Motion to Dismiss, Plaintiff does not waive any rights or arguments with respect to class certification or to oppose any future motions by the SEC.

*Atlantic Ry., Ltd.*, 888 F.3d 1, 6 (1st Cir. 2018) (citation omitted); *SEC v. Binette*, 679 F. Supp.

2d 153, 158 (D. Mass. 2010).

## I.      This Case Is Properly Asserted Under the APA.

The Complaint properly asserts jurisdiction and valid causes of action under the APA.

This Court has subject matter jurisdiction to resolve the APA claims asserted here pursuant to

28 U.S.C. § 1331, the statute providing for general federal question subject matter jurisdiction.

*See Califano v. Sanders*, 430 U.S. 99, 105 (1977) (Section 1331 "confer[s] jurisdiction on federal

courts to review agency action, regardless of whether the APA on its own force may serve as a

jurisdictional predicate"); *Succar v. Ashcroft*, 394 F.3d 8, 20 (1st Cir. 2005).

Congress enacted the relevant portions of the APA for the specific purpose of enabling

parties to challenge agency action that is in excess of the agency's statutory authority granted by

Congress or is otherwise not in accordance with law. *See* 5 U.S.C. § 706(2)(A), (C), (D) ("The

reviewing court *shall* . . . hold unlawful and set aside agency action, findings, and conclusions

found to be . . . arbitrary and capricious . . . not in accordance with law; . . . in excess of

statutory . . . authority; [or] without observance of procedure required by law." (emphasis

added)). "The central purpose of the APA is to 'provid[e] a broad spectrum of judicial review of

agency action.' Therefore, '[a] cause of action for review of [agency] action is available [under

the APA] absent some clear and convincing evidence of legislative intention to preclude

review.'" *Conservation Law Found., Inc. v. Busey*, 79 F.3d 1250, 1261 (1st Cir. 1996) (citations

omitted).

A proper claim under the APA must allege four elements:

1.  The plaintiff is "suffering legal wrong because of agency action" or is "adversely
    affected or aggrieved by agency action," 5 U.S.C. § 702;

2.  The claim under the APA is not for "money damages," *id.*;

3. The agency action was "final," *id.* § 704; and

4. "[T]here is no other adequate remedy in court," *id.*

The Trust satisfies each of these elements.

*First*, F-Squared, like all Class members, suffered a legal wrong as a result of unauthorized agency action because it was deprived of the money it was forced to pay in "disgorgement." *See Sierra Club v. Morton*, 405 U.S. 727, 733 (1972) (economic injuries satisfy the "legal wrong" element of Section 702). This legal wrong was caused by "agency action." *See* 5 U.S.C. § 551(13) (defining "agency action" in the APA as "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act"). The SEC does not dispute that Plaintiff has suffered a legal wrong as a result of agency action.

*Second*, the claims under the APA are not for "money damages," which the SEC also does not dispute. Plaintiff, like all Class members, seeks the recovery of specific sums of money that were unlawfully obtained by the SEC over the past six years, the limitations period applicable to APA claims. *See* Compl. ¶ 45. The return of money illegally obtained by the government is "relief other than money damages" because it is equitable in nature. *See Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) ("Our cases have long recognized the distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include . . . 'the recovery of specific property or *monies* . . . .'" (citations omitted)).

*Third*, this action challenges "final" agency action. The exercise of the SEC's authority to enter into a settlement, to issue related settlement orders, including the Settled Order, as well as its actions in collecting unlawful disgorgement, each independently constitutes "final" agency action. The Supreme Court has explained that agency action is "final" for the purposes of an

APA claim where it "mark[s] the 'consummation' of the agency's decision making process" and the action is "one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted); *see also Minard Run Oil Co. v. U.S. Forest Serv.*, C.A. No. 09-125, 2009 WL 4937785, at *22 (W.D. Pa. Dec. 15, 2009) ("A settlement agreement can constitute a judicially reviewable final agency action . . . ." (citations omitted)). The APA plainly provides an avenue for Plaintiff's challenge that the SEC acted "in excess of [its] statutory . . . authority" when it exercised its alleged statutory authority to seek, order, and collect disgorgement in this manner. *See* 5 U.S.C. § 706(2)(C); Compl. ¶ 43. The SEC does not argue to the contrary.

*Fourth*, neither the Plaintiff nor any Class member has another adequate remedy in court other than an APA action for violation of statutory and constitutional limits. The *Kokesh* Court did not hold—and Plaintiff does not allege—that there can never be an appropriate use of disgorgement by the SEC that comports with statutory requirements. Rather, the *Kokesh* Court held that the SEC's disgorgement *policies and practices* rendered SEC disgorgement punitive. Neither F-Squared nor any of the Class members could have brought APA claims to challenge these *policies and practices* in connection with the individual enforcement actions against them.

Moreover, these APA claims did not accrue until the *Kokesh* ruling. At the time F-Squared agreed to pay its purported "disgorgement," the SEC, F-Squared, and all lower courts uniformly believed that SEC "disgorgement" was remedial in nature and available to the SEC in addition to statutory penalties in each case in which misconduct resulted in gains to the respondent, regardless of whether the SEC would use that money for restitution or pay it to the U.S. Treasury. *See generally Kokesh*, 137 S. Ct. 1635. As described above, the Supreme Court's correction of 50 years of the SEC's and the lower courts' erroneous understanding of the nature

of the SEC's disgorgement practices raised questions about the SEC's power to seek non-compensatory disgorgement, and, thereby, invited challenges like this one. In fact, before *Kokesh*, such challenges would have been viewed by lower courts as borderline frivolous. *See SEC v. Quan*, 817 F.3d 583, 594-95 (8th Cir. 2016).[4]

As to F-Squared itself, it never litigated with the SEC, meaning there has never been a pending action in which Plaintiff could raise its claims either as a defense or a counterclaim even if they were viable before *Kokesh*. Private negotiations—that included the SEC's demand for purported "disgorgement" of $30 million—resulted in a settlement reflected in the Settled Order; the entire administrative proceeding essentially consisted of the filing of the Settled Order by the SEC. The gravamen of Plaintiff's claim here is that F-Squared *agreed* to "disgorge" $30 million because the SEC *misrepresented* the scope of its authority and F-Squared *mistakenly* thought that the SEC had the power it claimed to have had. It is, therefore, disingenuous for the SEC to claim now that an appeal to a court of appeals of the Settled Order was a viable remedy that F-Squared failed to pursue. The APA is the only proper tool to bring these challenges.

There also can be no serious dispute about whether the APA grants this Court the power to nullify a portion of an agreement predicated on agency action without proper authority. For example, in *Rashid v. United States*, 170 F. Supp. 2d 642 (S.D. W. Va. 2001), *aff'd*, 48 F. App'x 892 (4th Cir. 2002), the court found that it could adjudicate claims under the APA seeking to void an unauthorized settlement agreement. In *Rashid*, a doctor entered into a settlement agreement with the federal government to avoid prosecution for Medicaid/Medicare fraud. *See id.* at 643. In connection with that agreement, the federal prosecutor represented that the

---

[4] "Quan's last argument is that the district court could not order disgorgement because it was only authorized to grant equitable relief, and disgorgement—at least when, as here, not limited to specific assets traced back to a violation—is a legal remedy. . . . Quan's position finds no support in our precedent or elsewhere in the extensive body of case law on securities fraud. . . . In short, Quan utterly fails to dissuade us from affirming the disgorgement award the district court ordered here as a permissible equitable remedy." *Id.*

prosecutor had authority to bind the West Virginia Department of Health and Human Services (DHHR)—a state agency—to the settlement. *See id.* at 644. After execution of the agreement, the DHHR argued it was not bound by the settlement agreement because it had not authorized anyone to sign the agreement on its behalf. *See id.* When the statute of limitations on any crimes he may have committed had run, the doctor filed an APA claim seeking a declaration that the settlement agreement was null and void because the federal prosecutor had acted beyond the scope of his authority. *See id.* at 645. The court found that the APA applied to the doctor's claim, that the court had subject matter jurisdiction over the claim, and that the prosecutor did, indeed, act beyond his authority. *See id.* at 648.[5]

Like the federal prosecutor in *Rashid*, the SEC represented to F-Squared that it had the statutory authority to require F-Squared to pay $30 million in "disgorgement" to the U.S. Treasury, without any evidence of an accounting or any attempt to return the money to investors. Accordingly, the Trust's claims that the SEC did not have the authority to seek disgorgement in such a manner are proper, adjudicable APA claims. *See N.H. Hosp. Assoc. v. Burwell*, No. 15-cv-460, 2017 WL 822094, at *12 (D.N.H. Mar. 2, 2017) (explaining that the court shall set aside agency action that exceeds the scope of the agency's authority, noting "[a] claim that agency action is 'in excess of statutory jurisdiction, [or] authority. . . necessarily entails a firsthand judicial comparison of the claimed excessive action with the pertinent statutory authority'" (citations omitted)).

## II.   The SEC's Arguments Do Not Defeat this Case.

The SEC's waiver, jurisdictional, and statutory arguments cannot insulate the SEC's unlawful power grab from challenge. As discussed in more detail below, action that exceeds an

---

[5] The court did not grant relief, however, because it found that the agency, on whose behalf the prosecutor spoke out of turn, did as the prosecutor promised and so the doctor was not harmed as a result. *Id.* at 648-49.

agency's statutory authority violates the principles of separation of powers, and separation-of-power claims cannot be waived or bargained away. In addition, an order that exceeds statutory authority is void in relevant respects. F-Squared also did not make a knowing waiver of its right to challenge illegal disgorgement collaterally, and any such waiver would be unenforceable as a product of a mutual mistake. Finally, the securities laws' judicial-review provisions do not provide an exception to courts' general federal jurisdiction to hear constitutional APA claims like those here; nor do they in any way bar this action, which is not the result of contested SEC proceedings, and which does not seek to challenge or litigate the Settled Order.

### A.    This Case Alleges Claims that Cannot Be Waived Under Principles of Separation of Powers.

In essence, the claims asserted in the Complaint are for violations of the separation-of-powers doctrine. As such, they cannot be waived. The doctrine of separation of powers "prevents the accumulation of all powers, legislative, executive, and judiciary, in the same hands—an accumulation that would pose an inherent threat to liberty." *Patchak v. Zinke*, 138 S. Ct. 897, 905 (2018) (plurality op.) (citations and internal punctuation omitted). It "'is a *structural safeguard*' which has as one of 'its major feature[s]' the 'establish[ment] [of] high walls and clear distinctions because low walls and vague distinctions will not be judicially defensible in the heat of interbranch conflict.'" *NLRB v. New Vista Nursing & Rehab.*, 719 F. 3d 203, 242 (3d Cir. 2013) (citation omitted). Because an agency can exercise only those powers delegated to it by Congress, *see Ball, Ball & Brosamer, Inc. v. Reich*, 24 F.3d 1447, 1450 (D.C. Cir. 1994), agency action in excess of its statutory authority "implicates core notions of the separation of powers," *Union Pac. R.R. Co. v. Surface Transp. Bd.*, 863 F.3d 816, 822 (8th Cir. 2017); *see Mexichem Fluor, Inc. v. EPA*, 866 F.3d 451, 460-61 (D.C. Cir. 2017) (explaining that "bedrock separation of powers principles" required the court to declare a rule of the Environmental Protection

Agency (EPA) invalid where the rule exceeded the bounds of the EPA's statutory authority).

As discussed, the SEC began using disgorgement (and convinced lower federal courts to go along) under a dubious claim that it was obtaining non-punitive, remedial, equitable relief because it was not satisfied with the scope and breadth of its enforcement powers. When its enforcement powers were expanded, the SEC nevertheless persisted in using disgorgement, essentially double-dipping despite statutory limitations. Put another way, the SEC ignored clearly-expressed congressional will in favor of its own policy choices about what enforcement tools were needed for effective policing of compliance with the federal securities laws. This is a quintessential separation-of-powers violation. *See Util. Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2445-46 (2014) (explaining that "[a]n agency has no power to 'tailor' legislation to bureaucratic policy goals by rewriting unambiguous statutory terms," reasoning that it "would deal a severe blow to the Constitution's separation of powers" if an agency could "revise clear statutory terms that turn out not to work in practice," and "reaffirm[ing] the core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate"); *United States v. Giordano*, 469 F.2d 522, 528 (4th Cir. 1972) (holding that a wiretap procedure followed by the Attorney General that did not comply with the literal terms of the wiretap statute violated the separation-of-powers doctrine notwithstanding the Attorney General's assertion that the procedure "effectively paralleled" the statute and explaining that "[s]uch legislation by the Executive Department violates the separation of powers doctrine and is not to be tolerated"), *aff'd*, 416 U.S. 505 (1974).

Separation–of–powers claims may not be waived or bargained away. *See Freytag v. Comm'r*, 501 U.S. 868, 878-80 (1991) (rejecting argument that litigants waived an Appointments Clause challenge because "[t]he roots of the separation-of-powers concept embedded in the

Appointments Clause are structural" and concluding that the failure to raise the challenge earlier did not outweigh "the strong interest of the federal judiciary in maintaining the constitutional plan of separation of powers" (citation omitted)); *Bandimere v. SEC*, 844 F.3d 1168, 1186 (10th Cir. 2016) ("Neither Congress nor the Executive can agree to waive this structural protection . . . . The structural interests protected by the Appointments Clause are not those of any one branch of Government but of the entire Republic." (quoting *Freytag*, 501 U.S. at 880)), *petition for cert. filed*, (No. 17-475) (Sept. 29, 2017)).[6]

For these reasons, SEC Rule of Practice 240, *see* SEC Rule of Practice 240(c)(4)(v), 17 C.F.R. § 201.240(c)(4)(v) ("<u>Rule 240</u>"), is ineffective at obtaining a waiver of claims predicated on constitutional, separation-of-powers theories. By application of Rule 240, the SEC purports to condition all of its settlements, including the one with F-Squared, on an agreement not to seek review of the Settled Order in any court. To the extent Rule 240 would bar such a challenge, the Rule would be "invalid and unenforceable." *Ball*, 24 F.3d at 1451. The SEC has no authority to "adopt regulations erasing the [APA's] presumption of reviewability" in this manner, *id.* at 1450, or to require incorporation of Rule 240 into its orders accepting settlement offers for the purpose of preventing parties harmed by unlawful agency practice from challenging it. *See id.* at 1450-51 (holding that an "incorporation clause" in the plaintiff's contract with a governmental entity— which was mandated by regulation and incorporated all of the agency's regulations—was "invalid and unenforceable" to the extent it "purport[ed] to shield the [agency's] regulations from APA review in the courts" because Congress neither demonstrated its intent to foreclose the

---

[6] *See also United States v. Underwood*, 597 F.3d 661, 672 (5th Cir. 2010) (explaining that "Article III structural protections," which "ensure respect for . . . separation-of-powers principles," "may not be waived" (citation omitted)); *United States v. Martinez*, 122 F.3d 421, 425 (7th Cir. 1997) (explaining, where the defendant failed to raise his separation-of-powers argument to the district court that, "if the statute under which [the defendant] was sentenced violated the separation of powers doctrine, we would be required to reverse his sentence whether or not he had raised the issue in the district court").

plaintiff's challenge nor specifically authorized the agency to require a waiver of judicial

review).[7] Any contrary conclusion would run afoul of the "'well-settled presumption' in favor of

judicial review" that is embodied in the APA. *Id.* at 1450 (quoting *McNary v. Haitian Refugee*

*Ctr., Inc.*, 498 U.S. 479, 496 (1991)). In fact, even if there were here an applicable judicial-

review-preclusion statute, courts would find that it would have to yield to the fundamental

principle of separation of powers. *Owens v. Hills*, 450 F. Supp. 218, 221 (N.D. Ill. 1978) (Flaum,

J.) ("Concepts of 'separation of powers' and 'unlawful delegation of legislative power' mandate

judicial review of certain agency action even in the face of a judicial-review-preclusion statute to

insure that an agency has not clearly violated its statutory authority." (citations omitted)); *cf.*

*Nat'l Juvenile Law Ctr. v. Regnery*, 738 F.2d 455, 458-59, 466 (D.C. Cir. 1984) (per curiam)

(holding that, notwithstanding statutory-review procedure relating to an agency's grant decisions,

"[t]here can be no doubt that the District Court has federal question jurisdiction to hear" the

plaintiffs' claims that "the [agency]'s failure to provide continuation funding was a deprivation

of their property or liberty without due process of law, and a violation of the constitutional

principle of separation of powers" because "those claims do not depend on the implication of any

private right of action").

>    **B.**     **The Portion of the SEC's Settlement with F-Squared and the Portion of the
>             Settled Order Providing for Disgorgement Are Void Because the SEC Acted
>             Outside of Its Statutory Authority.**

When an agency exceeds its statutory authority, the orders, agreements, or other

documents entered reflecting that improper exercise, are void *ab initio* and of no legal effect. "It

goes without question that an agency of the Federal Government is only empowered to act within

the statutory guidelines establishing its power and that any action exceeding its statutory

---

[7] As discussed below, contrary to the SEC's assertion, nothing in the securities laws evidences congressional intent
to foreclose this challenge. *See infra* Section II.D.

authority is void." *Frillz, Inc. v. Lader*, 925 F. Supp. 83, 88 (D. Mass. 1996) (citation omitted),

*aff'd*, 104 F.3d 515 (1st Cir. 1997); *Abrams v. Trunzo*, 129 F.3d 1174, 1178 (11th Cir. 1997)

(Tjoflat, J., dissenting) ("The United States enters into contracts pursuant to federal statutory and

regulatory authority; any contract formed contrary to such authority is null and void.")

(collecting cases). In *Frillz*, for example, the U.S. Small Business Administration (SBA) moved

for summary judgment in a breach-of-contract action against it, arguing that its delegation of

authority to a private bank to determine the financial security of a loan was without a statutory

basis. *Frillz*, 925 F. Supp. at 85. The court granted the SBA's motion, holding that, because the

SBA was not statutorily authorized to delegate its authority to non-SBA personnel, the "contract

[was] void." *Id.* at 88.

Similarly, in *National Revenue Corp. v. Violet*, 807 F.2d 285, 286-87 (1st Cir. 1986), a

district court entered a declaratory judgment invalidating a state statute on the basis of an

agreement between a corporation and the Rhode Island attorney general. When the Rhode Island

Supreme Court learned of this judgment, it instructed the attorney general to move to vacate the

judgment. *Id.* at 287. After the district court did so, the First Circuit affirmed, holding that,

because the attorney general "[h]ad no authority to be the binding determiner that legislation is

unconstitutional[,] [t]he agreed judgment was void on its face." *Id.* at 288. Therefore, that portion

of the Settled Order relating to the SEC's unauthorized "disgorgement" is likewise "void on its

face" and can have no effect. *Id.*; *cf. Anderson v. Holder*, 673 F.3d 1089, 1095-96 (9th Cir. 2012)

("An order of removal issued against a U.S. citizen is always *ultra vires* and void, because the

agency has no jurisdiction to order citizens removed" and concluding that such a removal order

was a "legal nullity").

Because the relevant portion of the Settled Order is void, the Trust is entitled to the return of the money it paid as purported "disgorgement." *See TransAmerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979) (holding that "when Congress declared in [a federal statute] that certain contracts are void, it intended that the customary legal incidents of voidness would follow, including the availability of a suit for rescission or for an injunction against continued operation of the contract, and for restitution").

### C.   The Settled Order Is Predicated on a Mutual Mistake and Does Not Waive the Claims at Issue Here.

Even if it were permissible for a person to waive a separation-of-powers violation or to ratify an *ultra vires* agency action beyond its statutory authority (and it is not), any such waiver argument fails here for two reasons: First, the terms of the settlement are narrowly drawn in a manner that does not reach this case. And second, any waiver here would be unenforceable because it was based on a mistake of law.

Unlike typical settlement agreements that contain broad waivers of all claims—known and unknown, from the beginning of time—SEC rules do not permit the extraction of such a waiver. *See* 17 C.F.R. § 201.240(c)(4)(v) ("By submitting an offer of settlement, the person making the offer waives, subject to acceptance of the offer . . . [j]udicial review by any court."). By its own terms, therefore, the waiver of review of settled orders relates only to direct reviews of orders and not to collateral *claims* under the APA, such as this one. It also does not preclude *class action* challenges to *all* orders entered by the SEC in excess of the SEC's statutory authority.

The Settled Order is also a product of a mutual mistake. As noted, at the time the Settled Order was issued, both the SEC and Plaintiff believed that the SEC did have the powers that the

*Kokesh* Court put into question.[8] A settled order predicated on a mutual mistake inherits that

defect and is not binding in relevant part. In *United States v. Wyle (In re Pacific Far East Lines,*

*Inc.)*, 889 F.2d 242, 248 (9th Cir. 1989), for example, the court concluded that a settlement

between a bankruptcy trustee and the government under which the trustee paid a particular

statutory fee did not bar the trustee from obtaining a refund after Congress enacted a statutory

cap on that fee. The court reasoned that the parties to the agreement "both made an incorrect

assumption about the law" with respect to the amount of the fee that the government could

collect and that, by enacting the statutory cap, "Congress . . . declared that the . . . fee [in excess

of the cap] never had been due." *Id.* Similarly, in *Cloister Printing Corp. v. United States*, 100

F.2d 355, 355-57 (2d Cir. 1938), the court held that a settlement agreement did not bar a

taxpayer from seeking a tax refund because of the parties' mutual mistake of law. The parties

settled on the mistaken assumption that, based on lower-court precedent, jigsaw puzzles were

taxable as games, but, after the parties settled, the Supreme Court clarified that jigsaw puzzles

were, in actuality, never taxable as games. *Id.* In this case, the parties' mutual mistake of law

renders the "disgorgement" aspect of the settlement, and the relevant portion of the Settled Order

based thereon, unenforceable. Also unenforceable is any purported waiver of judicial

proceedings to challenge those unenforceable aspects.

     **D.**    **The Relevant Statutory-Review Schemes of the Federal Securities Laws Do Not Bar These APA Claims.**

     **i.**    **The Supreme Court's *Free Enterprise* decision demonstrates jurisdiction here and dooms the SEC's Motion.**

    The SEC is wrong to claim that the federal securities laws' statutory-review provisions

for SEC orders—Investment Company Act, 15 U.S.C. § 80a-42(a), and Investment Advisers Act,

---

[8] Because the law was so well-settled at the time of the settlement, the parties were not settling because of any uncertainty about the SEC's authority to obtain disgorgement. Instead, the parties settled over the issue of whether there had been a violation of the securities laws.

15 U.S.C. § 80b-13(a)—provide an exclusive review mechanism for challenges to the SEC's

authority and, thereby, deprive this court of federal question jurisdiction over the claims raised

by the Trust. *See* 15 U.S.C. §§ 80a-42(a), 80b-13(a). The Supreme Court directly and explicitly

rejected this very argument in *Free Enterprise Fund v. Public Company Accounting Oversight

Board*, 561 U.S. 477, 489-90 (2010). In *Free Enterprise*, the plaintiffs—who, like the members

of the Class in this case, were not involved in ongoing proceedings before the SEC—likewise

raised a separation-of-powers challenge to the appointment of the Public Company Accounting

Oversight Board. *See id.* at 487-88. The Court tersely rejected the government's argument that

the statutory-review provision of the Exchange Act, Section 78y, which is substantially the same

as Sections 80a-42(a) and 80b-13(a), precluded district court jurisdiction over the action. *Id.* at

489-91 & n.2. The Court determined that the text of Section 78y neither explicitly nor implicitly

precluded the district court's general federal question jurisdiction over the plaintiffs' separation-

of-powers claim. *Id.* at 489. The Court stated:

> The Government reads § 78y as an exclusive route to review. But the text does
> not expressly limit the jurisdiction that other statutes confer on district courts. Nor
> does it do so implicitly. Provisions for agency review do not restrict judicial
> review unless the "statutory scheme" displays a "fairly discernible" intent to limit
> jurisdiction, and the claims at issue "are of the type Congress intended to be
> reviewed within th[e] statutory structure."

*Id.* (citations omitted); *see also Conservation Law Found.*, 79 F.3d at 1261 ("The central purpose

of the APA is to 'provid[e] a broad spectrum of judicial review of agency action.' Therefore, '[a]

cause of action for review of [agency] action is available [under the APA] absent some clear and

convincing evidence of legislative intention to preclude review.'" (citations omitted)).

The Court further concluded that the plaintiffs' case fell outside the scope of Section 78y

because there was no current or impending enforcement proceeding in which these claims could

be reviewed; the claims were collateral to any SEC orders from which review might be sought

because they were constitutional challenges, and; the plaintiffs' claims were outside the SEC's

competence and expertise. *Free Enterprise*, 561 U.S. at 490. In other words, the Supreme Court

held that the judicial-review provisions of the securities laws do not deprive a court of

jurisdiction to hear a constitutional challenge unless there is an *ongoing or impending*

administrative proceeding in which these claims can be fairly heard, to which these claims relate,

and where the claims draw on the SEC's subject-matter expertise.

For these reasons, the SEC's reliance on a series of Appointments Clause challenges to

SEC administrative law judges is misplaced, because in each of those cases (in contrast to this

one and *Free Enterprise*) there were *ongoing or impending* SEC enforcement actions. *See* MTD

Br. at 8-9 & n.5 (citing *Chau v. SEC*, 665 F. App'x 67 (2d Cir. 2016); *Hill v. SEC*, 825 F.3d 1236

(11th Cir. 2016); *Tilton v. SEC*, 824 F.3d 276 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2187

(2017); *Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2015); *Bebo v. SEC*, 799 F.3d 765 (7th Cir. 2015),

*cert. denied*, 136 S. Ct. 1500 (2016)). Because an enforcement proceeding was either imminent

or ongoing in each of these cases, the constitutional claims raised in these cases were held not to

be wholly collateral to the proceedings at issue and, importantly, all review was not foreclosed

given availability of review by courts of appeals from any adverse ruling by the SEC. *See Chau*,

665 F. App'x at 70-72; *Hill*, 825 F.3d at 1245-52; *Tilton*, 824 F.2d at 286-89; *Jarkesy*, 803 F.3d

at 22, 27; *Bebo*, 799 F.3d at 774; *see also Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207-

09, 216, 218 (1994) (statutory-review scheme divested a district court of federal question

jurisdiction that would otherwise exist over a pre-enforcement challenge because the

enforcement proceedings would eventually culminate in an order reviewable under the statutory-

review scheme).

Although *Free Enterprise* makes plain that the statutory-review provisions at issue do not

deprive this Court of jurisdiction, they are, in any event, not applicable here. This is a class action challenging the SEC's policy and practice under the APA. There is no other adequate process for raising these claims.[9] *See Free Enterprise*, 561 U.S. at 489; *see also In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 501 F. Supp. 2d 34, 49 (D.D.C. 2007) (concluding that the court had subject-matter jurisdiction over a putative class action brought by a taxpayer challenging the IRS's tax-refund procedure and rejecting the IRS's argument that another adequate remedy existed because "there is no legal method to review the Notice procedure other than an APA action. Admittedly, the plaintiff could file a refund claim and, if his full refund were denied, file a refund suit—but this would merely enable him to challenge the IRS's final determination regarding his monetary claim, not the procedure itself"). Where, as here, claims "fall[] outside the text of a jurisdiction-channeling provision," they "may proceed in the district court." *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 127 (D.C. Cir. 2010); s*ee McNary*, 498 U.S. at 493-94.

Further, when a class action challenging an agency's statutory power is outside the scope of a statutory-review provision, it remains so even where the requested relief impacts the cases of individual class members. Indeed, in an analogous case challenging the practices and policies of the Immigration and Naturalization Service (INS), the Court upheld the district court's federal-question jurisdiction in the face of a statutory-review provision. *McNary*, 498 U.S. at 483-84. Specifically, in *McNary*, the Supreme Court held that a statutory-review provision that governed review of the INS's denials of individual applications for eligibility in an amnesty program did

---

[9] For this reason, the SEC's reliance on *New York Republican State Committee v. SEC*, 799 F.3d 1126 (D.C. Cir. 2015) is misplaced. That case involved a direct challenge to a specific SEC rule and nothing else. *See id.* at 1130-34. Additionally, the plaintiffs in that case, unlike the Plaintiff, still had an avenue for seeking review of their challenge: petitioning the SEC for the amendment or repeal of the rule, followed by judicial review of the SEC's decision on that petition. *See id.* at 1137.

Further, the Class is not limited to members who were respondents in settled administrative enforcement proceedings on which SEC's jurisdiction arguments are based.

21

not divest the district court of its general federal-question jurisdiction over a class action

challenging the agency's unlawful practices and policies. *Id.* The Supreme Court found that the

text of the review provision at issue did not encompass a challenge to the INS's statutory

authority. *Id.* at 491-96. Because the class members *did not* seek a specific declaration that their

applications should have been granted and instead sought only a declaration that the INS acted in

an unlawful manner, the statutory-review provision did not divest the court of jurisdiction. *Id,* at

494[10]; *see also Thunder Basin*, 510 U.S. at 213 (recognizing that *McNary* was a case that was

wholly collateral to the statutory-review scheme). The Court reached this conclusion even

though the relief obtained by the class included a district court order invalidating large categories

of individual application denials by the INS. *McNary*,498 U.S. at 488-89 & n.10, 494-95.

Like the class action in *McNary*, this class action falls outside the scope of the statutory-

review provisions invoked by the SEC. Plaintiffs are not challenging "an order issued by the

Commission," 15 U.S.C. §§ 80a-42(a), 80b-13(a), but are instead challenging the SEC's

longstanding practice of obtaining disgorgement in excess of its statutory authority and in

violation of the constitutional principles of separation of powers. *See Levy v. SEC*, 462 F. Supp.

2d 64, 65, 67-69 (D.D.C. 2006) (concluding that the court had jurisdiction over an APA action

challenging SEC amendments to rules because the amendments fell outside of the text of the

statutory-review provisions of 15 U.S.C. § 78y). Moreover, the mere fact that, if the Trust

prevails on the merits of its claims, it will obtain reimbursement of the amounts illegally seized

as "disgorgement" does not turn this class action into a run-of-the-mill attempt to obtain judicial

---

[10] *McNary* instructs that a statutory-review provision may not be used to foreclose claims that do not fairly fit within its text. *See Gen. Elec. Co.*, 610 F.3d at 126-27 (explaining that "claims falling outside the text of a jurisdiction-channeling provision . . . may proceed in the district court"). Unsurprisingly, then, courts have applied *McNary*'s analytical framework to other statutory-review provisions, including the Mine Act's statutory-review provision, *see, e.g.*, *Am. Coal Co. v. Mine Safety & Health Admin.*, No. 08-CV-0814-MJR, 2010 WL 653113, at *5-8 (S.D. Ill. Feb. 19, 2010), which employs language nearly identical to that contained in Sections 80a-42(a) and 80b-13(a). *Compare* 15 U.S.C. §§ 80a-42(a), 80b-13(a), *with* 30 U.S.C. § 816(a).

review of an SEC order. This is because the Trust and similarly-situated plaintiffs are not challenging the merits of the SEC's substantive decisions regarding violations of the securities laws or seeking a declaration that Class members did not violate securities laws but are challenging, instead, the SEC's unconstitutional and unlawful power grab. *See McNary*, 498 U.S. at 494-96.

### ii. *Res Judicata* does not apply.

For many of the same reasons that render the SEC waiver defenses inapplicable, so is its assertion of *res judicata*, to wit: (1) *res judicata*, a judge-made doctrine, must yield in the face of a claim that an agency violated the separation-of-powers doctrine for the reasons set forth above, *cf. Hawaii v. Trump*, 878 F.3d 662, 679-80 & n.6 (9th Cir. 2017), *cert. granted*, 138 S. Ct. 923 (2018); (2) it cannot rest on a void order—it is black-letter-law that *res judicata* applies only to "*valid* consent judgments, not necessarily to judgments that are held to be invalid on such grounds as fraud or mistake," *see Arrieta-Gimenez v. Arrieta-Negron*, 859 F.2d 1033, 1041 (1st Cir. 1988); *see also Donald F. Duncan, Inc. v. Royal Tops Mfg. Co.*, 343 F.2d 655, 678 (7th Cir. 1965) (holding that a consent judgment does not have *res judicata* effect where it inherits the infirmities of the parties' underlying settlement agreement); (3) it cannot rest on an order that inherited the defect of the mutual mistake of law in the settlement, *see Donald F. Duncan, Inc.*, 343 F.2d at 658 (concluding that consent judgment "furnishe[d] no legal basis for an application of the doctrine of res judicata" because it inherited the mutual mistake that infected the parties' settlement agreement); and (4) it does not apply if the legal theory of the case was unavailable at the time of the entry of the relevant order, *see Ljutica v. Holder*, 588 F.3d 119, 127-28 (2d Cir. 2009) (declining to apply *res judicata* to bar second action where legal theory was not available to the government at the time of the first proceeding); *cf. Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87, 92 (2d Cir. 2009) (rejecting a claim that the defendant waived a personal-

jurisdiction argument by failing to raise it to the district court because the argument was directly

contrary to then-controlling circuit precedent, and explaining that "a party cannot be deemed to

have waived objections or defenses which were not known to be available at the time they could

first have been made . . . . Put differently, the doctrine of waiver demands conscientiousness, not

clairvoyance, from parties" (citations omitted)).[11]

### iii.    Judicial-review provisions are irrelevant where, as here, there was no adequate remedy at the time of the enforcement action.

The SEC also cannot show that Plaintiff had an adequate remedy in court within the

meaning of Section 704 of the APA. Under Section 704, the "essential inquiry is whether another

statutory scheme of judicial review exists so as to preclude review under the more general

provisions of the APA." *See Bangura v. Hansen*, 434 F.3d 487, 501-02 (6th Cir. 2006) (citing

*Bowen*, 487 U.S. at 903) (finding no other adequate remedy in a court for an unsuccessful visa

applicant because the relevant statute "[did] not specifically provide for federal court review of

denials of visa petitions"). The Supreme Court has made clear that Section 704's "adequate

remedy" language should not be read rigidly or restrictively in light of the presumption of

reviewability. *Bowen*, 487 U.S. at 904. The Supreme Court favorably cited scholarly research

stating that the "adequate remedy" restrictions of Section 704 "ha[ve] been almost completely

ignored in judicial opinions." *Id.* at 902 (citations and internal quotation marks omitted). Instead,

Section 704 is merely intended to avoid duplication between an existing statutory-review scheme

and APA review of agency action. *Id.* at 903. Thus, the Supreme Court has counseled against a

"restrictive interpretation of § 704." *Id.* at 904.

A remedy is inadequate under Section 704 where it offers only "doubtful and limited

relief." *See Bowen*, 487 U.S. at 901. As a practical matter, where "the APA action does not put

---

[11] Because claims were unavailable until *Kokesh*, the SEC's reliance on *Federated Dep't Stores v. Moitie*, 452 U.S. 394 (1981), which does not address Plaintiff's unavailability argument, is misplaced.

the court in the inappropriate position of overseeing federal agency enforcement, but [instead] presents a question of statutory interpretation[,]" the no-adequate-remedy requirement will not serve as a bar to the APA claim. *See El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1270, 1275 (D.C. Cir. 2005) (finding that a remedy was doubtful and thus inadequate where the court could not easily determine whether the judicial-review provisions were intended to apply to certain agency determinations).

As shown above, the APA claim here does not "duplicate the previously established special statutory procedures" under the securities laws, *see supra* Section II.D, and the *only* adequate remedy—then or now—for the claims of this class is an APA action in this Court. Moreover, any attempt to raise this challenge to the SEC's improper exercise of its statutory authority prior to *Kokesh* would have been futile, and thus "too doubtful" to constitute an "adequate remedy" available to Plaintiff.[12]

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Court deny the SEC's Motion to Dismiss.

---

[12] In each of the cases cited by the SEC for the proposition that a plaintiff must have "no other adequate remedy in a court," there *were* other adequate remedies available to the plaintiff and none of those cases involves a claim that arose after the plaintiff purportedly failed to take advantage of the "other adequate remedy." *See Sable Commc'ns of Cal. Inc. v. FCC*, 827 F.2d 640 (9th Cir. 1987) (the plaintiff knowingly chose to forgo an available review scheme in favor of asserting an APA claim); *Pregis Corp. v. Kappos*, 700 F.3d 1348, 1359-60 (Fed. Cir. 2012) (the plaintiff had three alternative methods for pursuing a challenge to the validity of the patent, but chose to forgo all three in favor of an APA claim); *Town of Sanford v. United States*, 140 F.3d 20, 21 (1st Cir. 1998) (a town knowingly waived an adequate remedy in court because the town hoped that it would instead come to a favorable resolution with the federal government outside of court); *Mitchell v. United States*, 930 F.2d 893, 897 (Fed. Cir. 1991) (the plaintiff had previously brought the claim in the U.S. Court of Federal Claims seeking the identical relief, and sought a more favorable forum for his statute of limitations arguments in district court); *see also Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417 (6th Cir. 2016) (the court found that the plaintiff had an alternative remedy, which he chose to forego).

Dated: June 8, 2018
       Boston, Massachusetts

/s/ William R. Baldiga
**BROWN RUDNICK LLP**

William R. Baldiga, Esq. (BBO# 542125)
Sunni P. Beville, Esq. (BBO# 652369)
Wayne F. Dennison, Esq. (BBO# 558879)
Sharon I. Dwoskin, Esq. (BBO# 691579)
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200
Fax: (617) 856-8201
wbaldiga@brownrudnick.com
sbeville@brownrudnick.com
wdennison@brownrudnick.com
sdwoskin@brownrudnick.com

-and-

Alex Lipman, Esq. (admitted *pro hac vice*)
Justin S. Weddle, Esq. (BBO# 629766)
Ashley L. Baynham, Esq. (admitted *pro hac vice*)
Chelsea Mullarney, Esq. (admitted *pro hac vice*)
Selbie L. Jason, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Fax: (212) 209-4801
alipman@brownrudnick.com
jweddle@brownrudnick.com
abaynham@brownrudnick.com
cmullarney@brownrudnick.com
sjason@brownrudnick.com

-and-

Stephen A. Best, Esq. (admitted *pro hac vice*)
601 Thirteenth Street NW
Washington, D.C. 20005
Telephone: (202) 536-1700
Fax: (202) 536-1701
sbest@brownrudnick.com

*Counsel for Craig R. Jalbert, in His Capacity as Trustee of the F2 Liquidating Trust, on Behalf of Himself and All Others Similarly Situated*

26

## **CERTIFICATE OF SERVICE**

     I, William R. Baldiga, hereby certify that this document was filed on this date through the Court's CM/ECF system, which sent notice electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) as of the date of this filing.

Dated: June 8, 2018                                                       /s/ William R. Baldiga