UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRAIG R. JALBERT, IN HIS CAPACITY AS
TRUSTEE OF THE F2 LIQUIDATING TRUST,
on behalf of himself and all others similarly
situated,

                Plaintiff,

         v.                             Civil Action No. 17-12103

SECURITIES AND EXCHANGE COMMISSION,

                Defendant.

## DEFENDANT SECURITIES AND EXCHANGE COMMISSION'S
## REPLY IN SUPPORT ITS MOTION TO DISMISS THE COMPLAINT

The Court lacks subject-matter jurisdiction to hear this case. Congress has determined that parties aggrieved by final Commission orders may seek judicial review of those orders in an appropriate *court of appeals* within *sixty days* of their entry. That review scheme is exclusive. It does not permit a district court to entertain challenges to an order that the Commission entered three years earlier, as plaintiff F2 Liquidating Trust (collectively with plaintiff Jalbert, the "Trust"), successor in interest to F-Squared Investment Management, Inc. ("F-Squared"), asks the Court to do.

Dismissal is independently appropriate because the complaint fails to state a claim upon which relief can be granted. The Trust purports to plead a cause of action under the Administrative Procedure Act ("APA"), but the APA provides a cause of action only where there is "no other adequate remedy in a court." 5 U.S.C. § 704. Litigants aggrieved by Commission orders have a well-established avenue by which to obtain judicial review, provided that they

(unlike the Trust here) seek that review in a timely manner in the right court. F-Squared's choice to settle rather than avail itself of that right does not render the review scheme inadequate.

Finally, the Trust's claims are barred by *res judicata*. The Trust contends that the Commission exceeded its statutory authority to "enter an order requiring accounting and disgorgement" (15 U.S.C. § 80b-3(k)(5)) when it ordered F-Squared to disgorge the ill-gotten gains from its fraud. But the Commission resolved that question in December 2014, when it found it in the public interest to require F-Squared to pay disgorgement. That final order is entitled to *res judicata* effect and cannot be relitigated years later.

The Trust's counterarguments rest on the premise that *Kokesh v. SEC*, 137 S. Ct. 1635 (2017), changed the law in Commission disgorgement actions. But whether *Kokesh* had that effect is immaterial to the resolution of the Commission's motion to dismiss. Even if the Trust's reading of *Kokesh* were correct, that would not change the fact that Congress requires that challenges to Commission orders be filed in the courts of appeals within sixty days of their entry, not in a district court more than three years later. *Kokesh* also does not render that review scheme inadequate for purposes of the APA. And it is well-established that a change in judicial precedent does not deprive a final order of *res judicata* effect.

## ARGUMENT

While the Trust wants this case to be a vehicle for assessing the impact of *Kokesh* on Commission disgorgement proceedings, the question presently before the Court is narrow: whether the Trust, as the only named plaintiff in the complaint, has shown that the Court has jurisdiction to review its challenges to the imposition of disgorgement in F-Squared's administrative action and whether those challenges state a claim upon which relief could be granted. *See* Mem. in Supp. of Mot. to Dism., Dkt. No. 24 at 6-7 ("Mot. to Dism."); *see, e.g.*,

*Pruell v. Caritas Christi*, 645 F.3d 81, 84 (1st Cir. 2011) ("to establish subject matter jurisdiction [in a pre-certification class action] one looks only to the named plaintiffs and their claims"). The Trust does not dispute this legal principle. Accordingly, the remainder of this memorandum discusses only the Trust's claims.

**I.     This Court Lacks Jurisdiction to Consider the Trust's Untimely Challenges to the Commission's Disgorgement Order.**

Congress has created a comprehensive scheme for the commencement, adjudication, and judicial review of proceedings brought by the Commission. As relevant here, the Investment Company Act of 1940, 15 U.S.C. § 80a-1 *et seq.*, and the Investment Advisers Act of 1940, 15 U.S.C. § 80b-1 *et seq.*, authorize the Commission to address violations of the federal securities laws either by filing an enforcement action in federal district court or, as it did in its case against F-Squared, by instituting an administrative proceeding before the agency, *see, e.g.*, 15 U.S.C. §§ 80a-9(b), 80a-41(a), 80b-3(e), (f), and (k). *See* Compl. ¶ 58.

After the Commission brings an administrative proceeding, a respondent who is aggrieved by a final Commission order may seek direct review of that order by filing a petition for review. *See, e.g.*, *Flannery v. SEC*, 810 F.3d 1 (1st Cir. 2015). The petition can be filed "within sixty days" after the Commission enters its order "within any circuit wherein such person resides or has his principal place of business, or in the United States Court of Appeals for the District of Columbia." 15 U.S.C. §§ 80a-42(a), 80b-13(a). The court of appeals then has "exclusive" jurisdiction, and its judgment "affirming, modifying, or setting aside, in whole or in part, any such order of the Commission shall be final, subject to review by the Supreme Court." *Id*. These provisions afford "an exclusive avenue for judicial review that [a challenger] may not bypass by filing suit in district court." *Jarkesy v. SEC*, 803 F.3d 9, 30 (D.C. Cir. 2015). Because

3

the Trust seeks review of a final Commission order outside of this scheme, its complaint must be dismissed for lack of jurisdiction.  *See* Mot. to Dism. at 7-10.

While the Trust argues that this is "not an action * * * seeking to invalidate a single order" of the Commission, Resp. 6, that is in fact exactly what it is.  The Trust's response to the Commission's motion acknowledges as much:  the Trust argues that "[t]he Complaint properly asserts * * * valid causes of action under the [Administrative Procedure Act]"; recounts that an indispensable element of any APA claim is an injurious "final agency action"; and then identifies the Commission's 2014 order as the basis for its claims because, through it, F-Squared "suffered a legal wrong" by being "deprived of the money it was forced to pay in 'disgorgement.'"  Resp. 7-8; *see also* Compl. ¶¶ 41-43.  The Trust then asks this Court to vacate the portion of the Commission's 2014 order directing F-Squared to pay disgorgement, and issue an order compelling the Commission to "refund * * * $30 million [in] purported 'disgorgement' paid to the U.S. Treasury by F-Squared."  *See, e.g.*, Compl. ¶¶ 64-67, 71; Prayer for Relief.  That the Trust may not be asking the Court to unwind "the predicate findings that underpin any statutory penalties imposed," Resp. 6, is irrelevant.  *See* 5 U.S.C. § 551(6) (defining "order" as "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency").  Regardless of whether the Trust seeks to attack all or only parts of the Commission's 2014 order, those attacks may be heard only in the forum and within the time period Congress prescribed—*i.e.*, in an appropriate court of appeals within sixty days of the order's issuance, not in this Court several years after that deadline has expired.  15 U.S.C. § 80b-13(a).

The Supreme Court decisions on which the Trust principally relies—*Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010), and *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479

(1991)—cast no doubt on that conclusion, *contra* Resp. 19-22.  In *Free Enterprise Fund*, the Court held that the Exchange Act's channeling provision (15 U.S.C. § 78y(a)) did not prevent a district court from hearing a pre-enforcement challenge to the PCAOB's constitutionality because, given that Section 78y(a) only governs review of "*Commission* action[s]," and there would be no "*Commission* action" in the case to which Section 78y(a) could apply, immediate district court review was the only way for petitioners to "meaningfully pursue their constitutional claims."  561 U.S. at 490 (emphasis in original).  Likewise, in *McNary*, the Court permitted a pre-enforcement suit to proceed outside of an otherwise exclusive statutory review scheme not because the plaintiffs were attacking the agency's "policies" or "practices" (*contra* Resp. 22-23), but because plaintiffs could "ensure themselves review in courts of appeals only if they voluntarily surrender[ed] themselves for deportation," which, as the Court observed, "[q]uite obviously, [was] tantamount to a complete denial of judicial review for most undocumented aliens."  498 U.S. at 496-497.

Those concerns about the availability of meaningful judicial review are not present here. There unquestionably was a "Commission action" in this case that could have been subject to judicial review if F-Squared had chosen to pursue it.  *Free Enterprise Fund*, 561 U.S. at 490. And because F-Squared was at the time involved in a Commission administrative proceeding, it would not have been required to "erect a Trojan-horse challenge to an SEC rule or 'bet the farm' by subjecting [itself] to unnecessary sanction under the securities laws" in order to obtain judicial review of any objections to the Commission's disgorgement order.  *Jarkesy*, 803 F.3d at 20 (quoting *Free Enterprise Fund*, 561 U.S. at 490).

It makes no difference that the Trust has repackaged its APA claims as allegations that the Commission's actions violated separation-of-powers principles.  *Compare* Compl. ¶¶ 74-88

(asserting that the Commission violated the APA by acting in excess of its statutory authority to impose disgorgement) *with, e.g.*, Resp. 12 ("In essence, the claims asserted in the Complaint are for violations of the separation-of-powers doctrine."). Constitutional challenges to agency actions are not exempt from an exclusive channeling scheme. *Elgin v. Dep't of Treas.*, 567 U.S. 1, 8-9 (2012) (constitutional claims for equitable relief were subject to statute permitting judicial review exclusively by the Federal Circuit); *see also, e.g.*, *Tilton v. SEC*, 824 F.3d 276 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2187 (2017).

And the claims—however packaged—cannot be said to be collateral to or to arise outside of the securities laws' judicial review scheme because they "arise from actions the Commission took in the course of that scheme." *Jarkesy*, 803 F.3d at 23. For that reason, the Trust's effort to distinguish cases like *Jarkesy* on the ground that they involved "*ongoing or impending* SEC enforcement actions," Resp. 20, is meritless; either way, the Trust challenges actions arising out of the Commission's proceeding, and those challenges may be heard only in the courts of appeals within sixty days of a final Commission order. The Trust is unable to identify any case in which a party seeking judicial review of a final Commission order—whether styled as a class action or not, or a challenge to a "policy" or "practice" or not—was permitted to challenge that order in a district court rather than in an appropriate court of appeals within sixty days of the date the order was entered.[1]

---

[1] *Levy v. SEC*, 462 F. Supp. 2d 64 (D.D.C. 2006) (cited at Resp. 22) is inapposite. There, the district court held that it had jurisdiction to review a Commission *rule*—not an adjudicatory *order*—in light of the particular Exchange Act provisions under which the rule had been promulgated. *Id.* at 68 ("Because the SEC did not act pursuant to provisions directing judicial review explicitly to the circuit courts in promulgating the 16b Amendments, the statute does not confer jurisdiction on the circuit courts."); *see* 15 U.S.C. § 78y(b); *see also American Petroleum Institute v. SEC*, 714 F.3d 1329, 1333-1334 (D.C. Cir. 2013) (same).

To be sure, the Trust cannot now invoke the channeling provisions to obtain review of its claims in the courts of appeals. But that is because it waited for more than three years after the statutory deadline passed to pursue them, not because its challenges—if timely made—would have been unreviewable under the scheme. *See Free Enterprise Fund*, 561 U.S. at 489. When Congress "set[s] a particular procedure and time period" for challenging agency actions, the APA does not serve as a perpetual backstop for parties who fail to avail themselves of that procedure within the period Congress prescribed. *New York Republican State Committee v. SEC*, 799 F.3d 1126, 1135-1136 (D.C. Cir. 2015); *see also Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) ("Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency actions.").

## II.     The Trust Has Failed to State a Claim Upon Which Relief May Be Granted.

Even if the Court had jurisdiction to hear this case, the Trust's claims must be dismissed because the Trust cannot state a stand-alone claim for relief under the APA. The APA conditions the availability of a cause of action on the absence of another "adequate remedy in a court," 5 U.S.C. § 704; *see Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 621 (D.C. Cir. 2017), and as explained (Mot. to Dism. 11-12), the federal securities laws provide such a remedy for the Trust's claims. *See, e.g.*, 15 U.S.C. §§ 80a-42, 80b-13. Further, because the Trust seeks to collaterally attack the Commission's long-final order in this proceeding while standing in F-Squared's shoes, *res judicata* bars the Trust's suit. *See, e.g.*, *Town of Sanford v. United States*, 140 F.3d 20, 23 (1st Cir. 1998); *Ríos-Piñeiro v. United States*, 713 F.3d 688, 692 (1st Cir. 2013).

### A.     The Securities Laws' Channeling Provisions Offered an Adequate Remedy in Court for the Trust's Claims, Precluding APA Review.

The Trust does not dispute the Commission's reading of Section 704, but nevertheless argues that it should be allowed a long-belated second bite at the apple because the securities

laws' judicial review scheme is somehow inferior to the APA's, Resp. 24-25.  Not so.  The securities laws create a comprehensive framework through which F-Squared could have obtained *de novo* judicial review of any legal challenges to the Commission's order, and under which, after considering the same statutory and constitutional arguments the Trust presses here (but with the benefit of a full administrative record), an appropriate court of appeals could have "affirm[ed], modif[ied], or set aside" that order "in whole or in part," 15 U.S.C. § 80b-13.  The statutory review scheme, in other words, "offer[s] relief of the same genre" as would be available under the APA, and thus cannot be "inadequate" for purposes of Section 704.  *Citizens for Responsibility and Ethics in Washington v. DOJ*, 846 F.3d 1235, 1245 (D.C. Cir. 2017) (quotation and citation omitted); *see Telecommunications Research and Action Center v. FCC*, 750 F.2d 70, 78 (D.C. Cir. 1984) ("Where statutory review is available in the Court of Appeals it will rarely be inadequate.").  To the extent the Trust believes that it could assert its challenges to the Commission's disgorgement order only through a stand-alone APA suit in this Court, *see* Resp. 9, 25, it is mistaken.  Courts of appeals routinely apply the APA when reviewing Commission adjudicatory orders.  *See, e.g.*, *Flannery*, 810 F.3d at 6 (reviewing Commission order under 5 U.S.C. § 706).

Further, it is simply incorrect that there was no adequate remedy in court for F-Squared at the time of the Commission's enforcement action.  Resp. 24.  F-Squared *chose* not to avail itself of the judicial review scheme Congress provided by agreeing to settle with the Commission and waiving its right to judicial review of the Commission's disgorgement order.  A party who voluntarily forgoes an otherwise adequate judicial review scheme is not deprived of an "adequate remedy in a court" for purposes of the APA.  *Town of Sanford*, 140 F.3d at 23; *see Sable*

*Communications of California, Inc. v. FCC*, 827 F.2d 640, 642 (9th Cir. 1987) (judicial review scheme not inadequate where party's "own inaction * * * foreclosed review").

The Trust misses the point when it argues, Resp. 12-15, that F-Squared could not have waived judicial review of the Trust's newly minted separation-of-powers claims.  Whether the review scheme is adequate for purposes of Section 704 has nothing to do with whether F-Squared waived its right to seek judicial review.  The dispositive point is that the securities laws provide aggrieved litigants an opportunity to seek meaningful judicial review of Commission adjudicatory orders.  Therefore, the Trust's Section 704 claim fails.[2]

Nor, moreover, does it matter that the Commission's order predated the Supreme Court's decision in *Kokesh v. SEC*, 137 S. Ct. 1635 (2017), *contra* Resp. 9, 24 n.11, 25.  "[T]he question posed by Section 704 is whether the [alternative statutory review scheme] *offers* adequate remedies, not whether [the Trust] will be *entitled to receive those remedies*."  *Mitchell v. United States*, 930 F.2d 893, 897 (Fed. Cir. 1991) (emphasis added).  So even if the Trust's reading of *Kokesh* were correct, the fact that F-Squared's hypothetical pre-*Kokesh* challenges to the Commission's order might have failed on the merits is irrelevant.

### B.     *Res Judicata* Bars the Trust's Claims.

The Trust's contention, Resp. 23, that its suit is not barred by principles of *res judicata* is similarly flawed.  The Trust does not dispute that Commission adjudicatory orders are entitled to *res judicata* effect.  *See* Mot. to Dism. 12-14.  Instead, each argument it makes for why *res judicata* does not apply rests on the premise that *Kokesh* changed the law.  *See* Resp. at 23-24; *cf.*

---

[2]  In any event, structural constitutional claims *are* subject to waiver and forfeiture in civil cases. *See, e.g.*, *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 231 (1995) ("[T]he proposition that legal defenses based upon doctrines central to the courts' structural independence can never be waived simply does not accord with our cases.").

Resp. at 15-18 (arguing that, in light of *Kokesh*, the Commission's order against F-Squared is invalid, void *ab initio*, and is based on a mutual mistake of law).

But as the Commission demonstrated (Mot. to Dismiss at 14, n.8), it is "well-settled" that the *res judicata* effect of a judgment is not "'altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.'" *Depianti v. Jan-Pro Franchising Int'l, Inc.*, 873 F.3d 21, 32 (1st Cir. 2017) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)) (other internal quotation marks omitted); *see also Haag v. Shulman*, 683 F.3d 26, 32 n.2 (1st Cir. 2012) (it is "well settled" that "res judicata does not allow dispensation for intervening changes in the law"); *see also Comfort v. Lynn School Committee*, 560 F.3d 22, 26 (1st Cir. 2009) ("[A] case cannot be re-opened simply because some new development makes it appear, in retrospect, that a judgment on the merits long since settled was brought about by judicial error.").

*Ljutica v. Holder*, 588 F.3d 119 (2d Cir. 2009) (cited at Resp. 23), does not warrant a contrary conclusion. In that case, a convicted felon argued that the government's prior waiver of deportation following his conviction for bank fraud precluded the government from later denying his citizenship application on the basis that his crime was an "aggravated felony" under subsequent retroactive amendments to the immigration laws. *Id.* at 126. The court disagreed, holding that the government could not have argued in the plaintiff's prior deportation proceeding that he had been convicted of an "aggravated felony" because Congress had not yet defined his conduct as such. *Id.* at 127. There has been no similar development here. At all times relevant to this proceeding, the Commission had explicit statutory authority to impose disgorgement in its administrative enforcement actions. *See, e.g.*, 15 U.S.C. § 80b-3(k)(5). And the only "legal theory of the case" (Resp. 23) that the Trust has advanced with respect to the Commission's

order directing F-Squared to disgorge its ill-gotten gains is that the Commission failed to adhere to existing statutory procedures in imposing disgorgement.  *See* Compl. ¶¶ 74-88.  *Kokesh* said nothing about the Commission's statutory authority to impose disgorgement in administrative proceedings or the process by which it should do so.  Accordingly, and unlike in *Ljutica*, the Trust's claims are not ones that "could not possibly have been sued upon in the previous case," 588 F.3d at 127 (quotation omitted).

## CONCLUSION

For the foregoing reasons and those stated in the Commission's motion, the Court should dismiss the Trust's complaint for lack of subject-matter jurisdiction or for failure to state a claim upon which relief may be granted.

Respectfully submitted.

Dated:  July 13, 2018

/s/ Matthew S. Ferguson
Matthew S. Ferguson
Melinda Hardy
Daniel Staroselsky
John Capehart
U.S. Securities and Exchange Commission
Office of the General Counsel
100 F Street NE
Washington, DC 20549
(202) 551-3840 (phone) (Ferguson)
(202) 772-9263 (Fax)
FergusonMa@sec.gov
HardyM@sec.gov
StaroselskyD@sec.gov
CapehartJ@sec.gov

## **CERTIFICATE OF SERVICE**

I, Matthew S. Ferguson, hereby certify that this document was filed on this date through the ECF system and will be sent to the registered participants as identified on the Notice of Electronic Filing (NEF) as of the date of this filing.

Dated:  July 13, 2018                                             /s/ Matthew S. Ferguson